## RALEIGH AND GASTON RAILROAD COMPANY
### *et al. v.* PULLMAN COMPANY.

1. The assignment of error on the refusal of the judge to suspend his charge to the jury and allow the defendants to file an amendment to their answer is without merit.
2. The demurrer for want of jurisdiction was not well taken.
3. An action against a railroad company for the breach of a written contract to repair a sleeping-car used on its line of railway is not barred if brought within six years from the date of the breach.
4. By conferring upon one of its officers the title " General Manager," a railroad corporation holds him out to the world as possessing the implied power to make in its behalf a contract of the nature indicated in the last preceding note.
5. An answer by a defendant corporation, that for want of information it can neither admit nor deny an allegation that a named person is its " general manager," is evasive, and will be treated as an admission of the averment.
6. This is so though the answer be to an allegation in an amendment which the defendant was not required to answer.
7. A letter written in behalf of a corporation and signed by a person admitted by it to be its general manager, and which undertakes to bind the corporation by a contract which such officer had implied power to make, is admissible in evidence, in a suit against the corporation for a breach of the contract, over an objection that it is not shown that the person writing the letter had authority so to do.
8. *Quære :*   Whether a letter received by due course of mail, written on paper containing the letter-head of a corporation, signed by a person described as " general manager," and purporting on its face to be in reply to a letter to the corporation, is admissible in evidence, in a suit against the corporation for a breach of the contract set forth in the letter, without other proof that the person signing was general manager of the corporation, or that the letter was in fact written by him.
9. A contract signed by a person who adds after his signature the words " general manager," is not the individual undertaking of the person signing, if the contract shows on its face that it was made in behalf of another ; or if, in a suit for its breach, this fact appears by extrinsic evidence.
10. The evidence warranted the verdict, and there was no error in overruling the motion for a new trial.

Argued February 7, —Decided May 10, 1905.

Action on contract. Before Judge Reid. City court of Atlanta. June 29, 1904.

The Pullman Company began suit by attachment against the Raleigh and Gaston Railroad Company and the Seaboard and Roanoke Railroad Company, as lessees of the Georgia, Carolina and Northern Railway Company, both of the defendants being alleged to be foreign corporations. The allegations of the declaration were, in substance, as follows: On May 20, 1902, the defendant executed a contract as follows: "The Pullman Company to keep the cars furnished us under the agreement in good order and repair, except repairs and renewals hereinafter provided for, and such as are made necessary by accident or casualty, it being understood that the railroad company shall repair all damages to said cars of every kind occasioned by accident or casualty during the continuance of this agreement." Under this contract it was the duty of the defendants to repair all damages of every kind occasioned by accident or casualty to cars furnished the defendants by the plaintiff during the continuance of the agreement. The contract was of force on July 14, 1896, on or before which date the plaintiff furnished the defendants the sleeping-car Emison, which was on that date operated by the defendants in Fulton county. This car was seriously damaged by a collision of a train of the defendants, to which it was attached, with a gravel train of the Western and Atlantic Railroad Company. The extent and cost of the repairs necessary to be made on the car by reason of the collision were set forth. Immediately after the damage to the car the plaintiff called on the defendants to repair the damage, but they failed and refused to do so, although the repairs could and should have been made by September 14, 1896. Damages are claimed in the sum of $6,868.47, with interest from September 14, 1896. On November 7, 1899, the plaintiff furnished the defendants the sleeping-car Charmion, under the contract above mentioned. This car was damaged in Fulton county while in possession of the defendants, by striking a wagon. The amount of this damage was $11.35, and the defendants failed and refused to make the necessary repairs, although they should have been made by December 7. The plaintiff asks to recover this sum, with interest from December 7, 1899. The petition was filed and service acknowledged on September 21,

1901, and the attachment was issued on July 10, 1901.   On July 11, 1901, the defendants, by their attorneys, entered into a written agreement, under which the necessity of levying the attachment was dispensed with.

The defendants demurred on the grounds, that it appears upon the face of the petition that the first claim of damage is barred by the statute of limitations; that the alleged contract is not sufficiently set forth; that it does not appear of what the damages, or the expense of repairs, or the work done, consisted; and that it appears from the petition that the court has no jurisdiction of the other items.   In response to the special demurrer, the defendants amended and set forth two letters as constituting the contract relied on.   The first of these was as follows:

"Philadelphia, Pa., May 10th, 1892.

"Subject:   Agreement for operation of Pullman cars.

"Mr. O. V. Smith, Traffic Manager, Seaboard Air-Line, Norfolk, Va.

"Dear Sir:——Referring to the matter of the temporary agreement for the operation of the Portsmouth and Atlanta Line, I would ask if it will be satisfactory for you to operate this line, or any other lines you may desire started, under the following agreement:   1st. The Pullman Company to keep the cars furnished under this agreement in good order and repair, except repairs and renewals hereinafter provided for, and such as are made necessary by accident and casualty; it being understood that the Railroad Company shall repair all damages to said cars, of every kind, occasioned by accident or casualty, during the continuance of this agreement."

There were provisions in the letter relating to the compensation the "Seaboard Air-Line" was to pay, and to other matters, which need not be stated here.   The letter was signed:   "James Martin, Sup't."   The other letter was as follows:

"Raleigh, N. C., May 20th, 1892.

"James Martin, Esq., Superintendent Pullman Palace Car Company, Girard Building, Philadelphia, Pa.

"Dear Sir:—— Your favor of the 10th, to Mr. O. V. Smith, Traffic Manager, on the subject of agreement for the operation of

Pullman cars, has been forwarded to me. The agreement as therein stated meets with my approval. ·

　　　　Yours truly,　　　　Jno. C. Winder, General Manager."

An itemized statement of the damage and the repairs was also set forth. The amendment alleged that James Martin was superintendent of the plaintiff, and that "John C. Winder was General Manager of defendant." The defendants then renewed their demurrer relating to the jurisdiction and the statute of limitations; and added grounds of demurrer that no cause of action was set forth; and that the petition does not show what authority, if any, James Martin on the part of the plaintiff, and John C. Winder on the part of the defendants, had to enter into the alleged contract. The defendants answered, admitting that they were lessees of the Georgia, Carolina and Northern Railway Company, and admitting the allegations in reference to the agreement entered into by their attorneys to avoid a levy of the attachment, and denying the other material allegations in the original petition. In answer to the amendment to the declaration, it was averred that neither James Martin nor John C. Winder had authority to enter into the contract sued on. In reference to that paragraph in the amendment which alleged that John C. Winder was general manager of the defendants, it was alleged that "for want of sufficient information, it can neither admit nor deny the averments" in that paragraph. The court overruled the demurrers, and the defendants excepted pendente lite. The case was tried, and· a verdict was rendered in favor of the plaintiff for a stated amount. After requiring the plaintiff to write off a certain sum from the verdict, the court overruled the defendants' motion for a new trial. They excepted.

　　*Brown & Randolph*, for plaintiffs in error.
　　*Dorsey, Brewster & Howell*, contra.

Fish, P. J. 1. The motion for a new trial alleges that just before the judge concluded his charge to the jury, counsel for the defendants stated that they desired to amend their answer in a specified particular, to conform to some evidence which had been introduced in the case. There was no tender of an amendment, but only the statement above referred to. It is alleged that "the court refused to consider the statement as the tender of an amendment," and proceeded with the charge. This is not cause for

reversal. Where an amendment is offered and disallowed, it must be brought up in the bill of exceptions, so that this court may determine whether, if the ruling was erroneous, injury resulted to the complaining party. Here no amendment was offered, and none was brought to this court either in the record or the bill of exceptions. It is therefore impossible for this court to say whether the defendants were hurt by the judge's ruling. In addition to this, it was within the discretion of the court to suspend the charge and allow counsel time to prepare their amendment. Furthermore, the ruling complained of can not be properly excepted to in a motion for a new trial. *Lowery* v. *Idleson,* 117 *Ga.* 778. Besides, counsel might have prepared the amendment and tendered it even after the jury had retired, if they had not then agreed upon a verdict. See, in this connection, *Beach* v. *Lattner,* 101 *Ga.* 357 (3).

2. That ground of the demurrer relating to the jurisdiction of the claim set forth in the second count of the petition did not set forth any reason why the court was without jurisdiction. Nor is any reason set out in the brief of counsel for the plaintiffs in error. Indeed, it is doubtful if this point is insisted on in the brief. We are unable, however, to see any merit in it. The damage was alleged to have occurred in Fulton county. The claim was founded on an alleged breach of contract, and was clearly within the jurisdiction of the city court.

3. The claim set forth in the first count of the petition was not barred. Whether the date of the agreement dispensing with a levy of the attachment, or of the filing and service of the petition, or of the issuance of the attachment, be taken as the ending of the period, the action was brought within six years from the time the alleged damage occurred. Civil Code, § 3767.

4. The main and controlling question in the case is whether a contract between the plaintiff and the defendants was shown. This question is raised in a variety of ways, by demurrer, by motion to nonsuit, by objection to evidence, and by assignments of error on charges of the court. We will first deal with the question as raised by the demurrer. The petition set forth two letters as constituting the contract relied on. The one purporting to have been written in behalf of the plaintiff was signed by James Martin, describing himself as superintendent. The one claimed to

have been written in behalf of the defendants was signed "Jno. C. Winder, General Manager." The demurrer raises the objection that the petition does not show that these officers had authority to make the contract. In reference to the letter signed by James Martin, all that it is necessary to say is, that, even if he had no authority to act for the plaintiff, by bringing the suit it has ratified his action. The petition does not allege that John C. Winder was authorized to enter into the contract for the defendants. But it does allege that he was their "General Manager." The question is therefore presented, whether the courts will presume, in the absence of a contrary showing, that a general manager of a railroad company has authority to bind the corporation by a contract such as the one claimed to have been entered into in this case. The general rule is that when a contract made by an agent is relied on, the authority of the agent must be shown. But a principal may permit a person to hold himself out as his agent and act in such a way that authority to do a given act will be presumed. If a person imposes upon another duties and responsibilities involving the management and control of a business, such person will be presumed to have authority to represent his employer in any matter within the scope of the business. And this applies more peculiarly to corporations, which act only through their officers and agents. *Southwestern Railroad* v. *Mitchell*, 69 *Ga.* 114; *Ga. Military Academy* v. *Estill*, 77 *Ga.* 409; *Fulton B. & L. Asso.* v. *Greenlea*, 103 *Ga.* 376 (2). In such a case the corporation would be bound notwithstanding under its contract with its agent, or by a by-law, he was not to have authority to do the act for which the corporation is sought to be held liable, if the person dealing with the agent had no notice of the limitation upon the agent's authority. *Louisville R. Co.* v. *Tift*, 100 *Ga.* 86; Civil Code, §§ 1861, 3023; 4 Thomp. Corp. §§ 4628, 4650. Doubtless all persons would be bound to notice charter limitations on the authority of corporate agents. But here the defendants are foreign corporations, and no charter provisions are pleaded.

If, therefore, it had been shown that Winder as general manager had general supervision and control of the affairs of the defendants, it would be clear that authority to make the contract relied on would be presumed. The plaintiff rests this branch of its case on the bare allegation that Winder was general manager of the

defendants and as such made the contract in their behalf.   Is this a sufficient allegation of authority ?   In our opinion it is enough to make a prima facie case for the plaintiff.   The terms " general manager" are words of large meaning.   In and of themselves they imply duties and responsibilities which would devolve upon a person having the management and control of the corporate affairs. By giving such a title to this officer the corporation holds him out to the world as its managing agent, its alter ego, as the person having general and supreme authority as the immediate representative of the directors in the conduct of the corporate affairs and in its dealings with the public.   To allow a corporation to confer such a title upon one of its officers and thus hold him out to the world as possessing the large responsibilities and powers which are to be implied from his title, and then permit it to repudiate engagements into which he has entered within the scope of such implied powers, would be to sanction the perpetration of a fraud ; and this the courts will never do except under the stress of the most mandatory requirement of the law.   In this connection we quote the following pertinent observations of the Supreme Court of Indiana, in the case of Louisville Ry. Co. *v.* McVay, 98 Ind. 398:   " Can we presume, from the title 'general manager,' that the duties and powers of the general manager were sufficiently comprehensive to include contracts for the nursing of a person wounded upon appellant's road ?   The term 'general manager' of a corporation, according to the ordinary meaning of the term, indicates one who has the general direction and control of the affairs of the corporation, as contradistinguished from one who may have the management of some particular branch of the business.   There is no class of business of anything like the magnitude of the railroad business of to day, that is so open to common observation, and of which the general public know so much.   The terms, roadmaster, section boss, conductor, station agent, superintendent, and general manager, are terms familiar to the whole people, and the public has, in the main, a correct understanding of the ordinary duties of these several classes of officers, agents, and employees, and that their duties and powers are limited to the keeping up of the road, rolling stock, etc., and operating the road in the transportation of freight and passengers.   We should have to shut our eyes to the most common observation to hold that the courts will

not presume that the 'general manager' of a railway has authority to bind the corporation by contracts for medical and other services to an injured employee, passenger, or other person wounded on the road by any agency of the company." See also 4 Thomp. Corp. § 4850; Sacalaris *v.* R. Co., 14 Nev. 155; Whitaker *v.* Kilroy, 70 Mo. 636; Topeka Asso. *v.* Martin, 39 Kan. 750; *Minn. Lumber Co.* v. *Hobbs,* 122 *Ga.* 20; 1 Ell. R. Law, 293 (n.); 1 Wood on Railroads, 481; 10 Cyc. 933. The petition was not open to any of the objections raised in the demurrers.

5. The defendants in their answer denied that Winder had authority to make the contract, but did not deny that he was general manager. As to this they answered that, for want of information, they could neither admit nor deny. This was obviously an evasive answer. The defendants necessarily knew whether or not Winder was their general manager when the contract was made, and they will not be permitted to evade a direct answer to the allegation. The evasive answer will be treated as an admission that Winder was their general manager. Civil Code, § 5054; *Horne* v. *Peacock,* 122 *Ga.* 45.

6. Nor is this rule changed by the fact that the allegation that Winder was general manager was made in an amendment to the petition. The amendment need not have been answered, and the plaintiff would have been put to proof without an answer. *Hudson* v. *Hudson,* 119 *Ga.* 637; *McElmurray* v. *Blodgett,* 120 *Ga.* 9. But the defendants did not avail themselves of this privilege. They answered, and by their answer in effect admitted the allegation. If they had made a direct admission, they would unquestionably have been bound by it; and the same result follows from an answer which the statute declares amounts to an admission. The effect of the pleadings was to cast upon the defendants the burden of showing that Winder as general manager did not have authority to enter into the contract, and that the plaintiff either knew or was bound to know thereof.

7. The letter set out in the petition and introduced in evidence as having been written by John C. Winder, General Manager, was written on a sheet containing the following letter-head:

"SEABOARD AIR-LINE.

Office of General Manager.

Seaboard & Roanoke R. R. Co.
Roanoke & Tar River R. R. Co.
Raleigh & Gaston R. R. Co.
Durham and Northern Ry. Co.
Raleigh & Augusta Air-Line R. R. Co.
Carolina Central R. R. Co.
. Georgia, Carolina and Northern Ry. Co.

J. C. Winder, General Manager."

The letter was addressed to James Martin, Esq., " Supt. Pullman Palace Car Co.;" and purported on its face to be in reply to a letter from the person addressed, to O. V. Smith, " Traffic Manager." In this letter Smith was described as traffic manager of the Seaboard Air-Line. The defendants objected to the admission of the letter in evidence, on the grounds that authority to write the letter had not been shown, and that the letter appeared to be the individual undertaking of John C. Winder, the words " General Manager," after the signature, being merely descriptio personæ. The first objection has been in effect disposed of by what is said above. In *Minnesota Lumber Co.* v. *Hobbs,* supra, the point was raised by objection to the admission in evidence of the contract relied on; and it was held that the presumption of authority in the general officer of the Lumber Company was sufficient to authorize the admission of the contract in evidence. The defendants having in effect admitted that John C. Winder was their general manager, the objection to the admission of the letter was properly overruled.

8. According to the decisions of some of the courts of last resort in this country, the letter contained on its face sufficient averments to show prima facie that it was written by a person having authority to act for the corporation. In Bloom *v.* State Insurance Co. (Iowa), 62 N. W. 810, it was held: " Letters written from the home insurance office to the insured are not inadmissible on the ground that no proof is offered of authority to write them in the persons by whom they were written, where they were in answer to letters to the company, and were written on paper containing its letter-heads, and part of them purport to be signed by the secretary and superintendent of the loss depart-

ment." In Armstrong *v.* Advance Thresher Co. (S. Dak.), 57 N. W. 1131, it was held: "A letter received by due course of mail, purporting to be written by the managing agent of a corporation, in reply to a letter addressed to the corporation and sent through the mail, is presumptively genuine and authorized, and is admissible in evidence without further proof that such person is the managing agent of such corporation, or that the letter was written by the party by whom it purports to be signed." In the opinion several authorities are cited to sustain the ruling. A similar ruling was made by the Supreme Court of Kansas, in Norwegian Plow Co. *v.* Munger, 35 Pac. 11. These decisions appear to be a somewhat radical departure from the fundamental principles governing the law of evidence and agency, but we are not prepared now to either approve or disapprove the ruling, nor is it necessary for us in this case to express any opinion as to its soundness or unsoundness.

9. Corporations act only through agents, and are responsible for their acts within the sphere of their duties. Civil Code, § 1861. An agent may contract in his own behalf even as to a matter which would be within the scope of his duties as agent; and if he does so contract, of course the principal will not be bound. But "the form in which the agent acts is immaterial; if the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal." Civil Code, § 3022. "The question to whom the credit was given is a question of fact to be decided by the jury in each case." Civil Code, § 3039; *Cleaveland* v. *Stewart*, 3 *Ga.* 283 (3); *Fleming* v. *Hill*, 62 *Ga.* 753, quoting as follows from Story's Agency, § 288: "The question is, to whom was the credit knowingly given, according to the understanding of both parties." In construing a contract, where it is doubtful whether the person signing the same as agent intended to bind himself or his principal, the rule is that if it does not show on its face that it was intended to be the act of the principal, the agent will be presumed to have intended to bind himself personally, though he adds after his signature the word "agent" or other words of description. *Partridge* v. *Hollinshead*, 105 *Ga.* 278, 283. See also 1 Enc. Dig. Ga. R. 242, and cit. But this presumption may be rebutted by evidence, written or parol, showing it to have been the understanding of the parties

that the principal was to be bound. Here the letters show on their face that it was the intention and understanding of the parties that the contract was made in behalf of the respective principals of the persons writing the letters. Certainly it could not have been their understanding that James Martin, Superintendent, was to hire to John C. Winder, General Manager, as an individual, Pullman cars, to be used on a railroad owned, not by John C. Winder, but by a railway company. In addition to this there was direct testimony by James Martin that the letters written were intended to be a contract between the Pullman Company and the Seaboard Air-Line. In Missouri Ry. Co. *v.* Brown, 14 Kan. 557, Brown sued the railway company for debts created by W. M. McLeod. In support of his claim the plaintiff introduced in evidence a memorandum of a contract reciting that " W. M. McLeod agrees to do grading . . under the direction of the engineer of the M., K. & T. Ry. Co.," etc. The memorandum was signed, " W. B. McLeod, E. B. Stevens." In reference to this memorandum Mr. Justice Brewer said: " Now while the defendant does not appear upon the face of this agreement as party thereto, yet the testimony of Stevens above given shows that he was simply the agent of the company, and as such agent made the contract with McLeod. Upon such testimony McLeod would have had no difficulty in recovering from the company for the work he did under said contract. It was plainly its contract."

There was no objection to the letters in this case on the ground that they referred to the " Seaboard Air-Line," and there was nothing to show that Winder was acting in behalf of the defendants when he wrote the letter signed by him. The objections were merely that there was no proof of his authority so to act, and that the letter showed that he in fact was acting for himself as an individual. These objections were not well taken. Of course, if the evidence failed to show that the contract was in fact made for the defendants, there could be no recovery. But, as we shall presently show, there was evidence to this effect.

10. The plaintiff made by its evidence a prima facie case, and it was therefore not error to refuse to grant a nonsuit. It proved the contract, the breach, and the damage. The evidence is not altogether satisfactory on the question whether the sleeping-car Emison was in the possession of the defendants when the damage

to it occurred, but there was some evidence to this effect. The letters constituting the contract referred to the "Seaboard Air-Line" Railroad. The witnesses all referred to the railroad as the "Seaboard Air-Line." On the letter-head of the letter signed by Winder, General Manager, the words "Seaboard Air-Line" appeared in large capitals, and below and to the left were the names of a number of railroad companies, with John C. Winder's name, as general manager, at the bottom. Apparently all these railroads constituted the Seaboard Air-Line, but a jury could not find this from the letter-head alone. We think, however, that taking all the testimony together, and especially that of the witness Gresham, the jury might find that the defendants and the Seaboard Air-Line were in effect the same; that the corporate names of the defendants were as stated in the petition, but that the line of road operated by the defendants between Portsmouth and Atlanta was called both the Seaboard Air-Line and the Georgia, Carolina and Northern Railway, and that the contract for sleeping-cars contemplated that the cars should be used on this line. The answer admits that the defendants were lessees of the Georgia, Carolina and Northern Railway. There was positive testimony that when the car Emison was damaged it was attached to a train in the charge of the crew of the defendants. The contract clearly covered damage of the character sued for, and there was evidence of the extent of the damage and cost of repairs which warranted the jury's finding after the deduction had been made therefrom which the court required. There was no expression of opinion in the charge, nor were the contentions of the plaintiff unduly stressed. There was no error requiring the granting of a new trial.

*Judgment affirmed. All the Justices concur, except Candler, J., absent, and Lumpkin, J., not presiding.*