MIDLAND SAVINGS & LOAN CO. v. SUTTON *et al.*

No. 1464.   Opinion Filed December 12, 1911.

(120 Pac. 1007.)

1.   PRINCIPAL AND AGENT—Authority of Agent—Questions for Jury.   The question of agency and the extent and scope of the agent's authority are to be determined by the jury, as other facts, from the evidence.

2.   SAME—Authority of Agent—Questions for Jury.   The apparent authority of an agent is to be gathered from all the facts and circumstances in evidence, and is a question of fact for the jury. (Minn. Thresh. Mach. Co. v. Humphrey, 27 Okla. 694, 117 Pac. 203.)

3.   SAME—Estoppel to Deny Agency.   One who leads an innocent party to rely on the appearance of another's authority to act for him will not be heard to deny the agency to the party's prejudice.   (U. S. Fid. & G. Co. v. Shirk, 20 Okla. 576, 95 Pac. 218.)

4.   SAME—Authority of Agent—Presumptions.   Parties dealing with a known agent have a right to presume that the agency is general, and not special, and the presumption is that one known to be an agent is acting within the scope of his authority.

5.   SAME—Authority of Agent—Burden of Proof.   The authority of an agent to receive payment for his principal must be proved by the party making payment; but the proof need not be direct, it may be inferred from the circumstances of the case.

6.   TRIAL—Questions of Law or Fact—Conflicting Evidence.   Where there is evidence reasonably tending to sustain the issues on the part of the plaintiff and the evidence on the part of the defendant conflicts therewith, the determination thereof is for the jury. (Taylor v. Ins. Co., 25 Okla. 92, 105 Pac. 354, 138 Am. St. Rep. 906.)

(Syllabus by Robertson, C.)

*Error from Superior Court, Pittsburg County; P. D. Brewer, Judge.*

Action by Ellis Sutton and another against the Midland Savings & Loan Company for the cancellation of a real estate mort-

gage and the recovery of a statutory penalty for failure to release. Judgment for plaintiffs, and defendant brings error. Affirmed.

*F. H. Kellogg* and *A. J. Bryant,* for plaintiff in error.

*W. H. Fuller* and *Geo. M. Porter,* for defendants in error.

Opinion by ROBERTSON, C.   The only question in this case is one of agency.   While many other questions have been raised in the petition in error, and argued by counsel in their briefs, yet by agreement it is now conceded that the only question is whether or not H. E. Swan was the agent of the plaintiff in error, and authorized by it to accept payment in full from defendants in error, of a note and mortgage for and in behalf of the plaintiff in error.   It appears from the evidence that H. E. Swan was the principal officer of the Swan Company, and represented the plaintiff in error at McAlester, as its local agent. Plaintiff in error denies that Swan was its agent for the purpose of collecting in full the loan made to the Suttons.   Defendants in errer contend that he was the agent for that, as well as many other purposes, and sets up a number of facts as tending to show that Swan was the agent of the company at McAlester, and authorized by it to accept the payment in question.   Among the reasons urged by defendants in error; showing that Swan was the agent for this purpose, are the following: First.   The plaintiff in error furnished Swan all necessary blanks for soliciting loans made by their company.   Second.   The president of the plaintiff in error, on page 96 of the record, states that Swan took applications for loans and presented them to the company for approval and was designated as local collector.   Third.   The inspectors of plaintiff in error, as shown by the witness Cannington, came and dealt with the Swan Company, and recognized it as the agent of the plaintiff in error.   Fourth.   The Swan Company solicited loans and H. E. Swan solicited the Sutton loan.   Fifth. The money for this loan was sent direct to H. E. Swan by draft made payable to defendants in error and Swan.   Sixth.   Full instructions were sent to the Swan Company accompanied by the

draft, as to how the loan should be applied. No instructions were sent to the Suttons. Seventh. Suttons paid Swan no commissions. Commissions were paid to Swan by the plaintiff in error. Eighth. Swan, under the instructions which accompanied the draft, and in supplemental instructions contained in a letter from plaintiff in error to the Swan Company, December 8th, refused to turn the proceeds of the draft over to Suttons. Ninth. Money was paid to the Swan Company for the benefit of plaintiff in error, not only by Suttons, but by many other people. Tenth. A large number of letters written by the plaintiff in error and set up as exhibits in the case-made show conclusively the agency of Swan, which is broad enough in its scope and extent to include the collection of the loan in controversy. Eleventh. Plaintiff in error claims to have sent a letter to defendants in error under date of June 19, 1908, in which it states that the Swan Company, if it collected from them, would do so as their agent. The defendants in error both specifically and emphatically deny that any such letter was ever received by them.

This loan was negotiated in June, 1909, and plaintiff's Exhibit A, page 137 of the case-made, which is a letter from the plaintiff in error to the Swan Company, reads as follows:

"The Midland Savings & Loan Company,
"Home Office, Continental Building,
"Denver, Colo., June 9th, 1908.
"(Dic. FEC-M)
"Gentlemen: Herewith we hand you our Kansas City draft No. 22574 for $787.20, payable to the order of Ellie Sutton, P. F. Sutton, and yourselves, with voucher attached, account balance due in our loan No. 2600, together with all other papers for the full closing thereof, and you will please follow instructions closely, and oblige.

"We note this money is to be used to build two four-room houses, just alike. The application does not say anything about sheeting and weather boarding. We trust the buildings are going to be sheeted outside and weather boarded both. Before turning over any of the money you must know that the buildings are fully completed in every particular, both outside and in, including painting outside, and then you will not go ahead with the loan or turn over any of the money unless you know of your own

knowledge that they have sufficient funds, including our loan, to pay all bills of every kind and character, so that there can be no mechanics' liens filed that might become prior to our mortgage, and you must have every one who furnished either labor or material sign the waiver.

"In regard to the insurance, please see that an equal amount is placed on each house.

"We enclose herein a pencil sketch of the plan that you gave us, and you must see that the porches are built in strict accordance therewith, bath room, etc., and return the plans with the other papers when you are through with them.

"Please have the parties sign the first mortgage bond with their names and initials, Ellie Sutton and P. F. Sutton, before witnesses, exactly as they appear in the body of the instrument; have them sign and acknowledge the mortgage in the same manner; and have Ellie Sutton assign the certificate of stock on the back where indicated by pencil marks, being careful that she signs in every case with her name, Ellie Sutton, so that there will be no break in the chain of title.

"When papers are signed as above, providing acknowledgment on the mortgage is in proper form, you can have the latter filed, and abstract continued showing same.

"If there is nothing else intervening on the abstract, our mortgage thereby being a first lien (and you will not go ahead with the loan or turn over any of the money until the abstract has been continued, and you know of your own knowledge that our mortgage is a first lien in every particular).

"Provided, further, that all taxes are paid, including for the full levy of 1907 (and you will not accept the abstract or turn over any of the money until the certificate of the abstracter as to taxes reads specifically 'all taxes paid including for the full levy of 1907').

"Provided further, that you have been furnished insurance policies, both fire and tornado, for at least $1,000.00 each, for three or five years, in some well-established Eastern company, for an equal amount on each house, with our mortgage clauses attached form herewith (and you will not accept the policies or turn over any of the money until they are actually delivered to you with our mortgage clauses attached in proper form).

"Provided further, that the buildings are fully completed in every particular, there being two buildings just alike, being one-story frame residences, solid stone foundations, size of main part of house 14x28, ells 14x14, 4 rooms and bath, 2 closets, 2 porches

complete, and under roof, rooms papered and canvassed, 12 feet posts, 10 foot ceilings, inside woodwork complete throughout of yellow pine, yellow pine flooring, all exposed woodwork, both outside and in, painted at least 2 coats, 2 brick chimneys built from brackets, shingle roof, bath room with toilet, closet and bathtub, stationary wash bowl, sewer connection, city water, sink in kitchen, electric lights, cement sidewalk, board walks in main building, macadamized street in front.

"Provided further, that all parties who have furnished either labor or material on the buildings have signed the waiver, and it has been properly sworn to according to the form thereof, and according to the printed instructions thereon.

"On them signing the voucher, you can turn the money over to proper parties, seeing that it is disbursed wholly for labor and material, as far as necessary to pay those bills, having every one who furnished either sign the waiver.

"We enclose passbook showing credit for the June install-ment of $12.80, on the stock deducted from the loan. No interest is charged for June. Full payment of $20.80 will be due in July and monthly thereafter. With delivery of passbook please give proper instructions as to future installments and oblige.

"Please see that all bills for recording, abstracting, insur-ance premiums, etc., are provided for, or paid out of the draft.

"We have notified the parties to call upon you, and trust everything will be satisfactory.

"Kindly return all papers in proper form as soon as possible.
Very respectfully,
"F. E. CARRINGER, President."

A careful perusal of this letter shows that plaintiff in error recognized Swan as its agent, by turning over to him the draft for the loan, and while the draft was made payable to both parties, and the Suttons indorsed the same, yet the instructions of hte company to Swan in the above letter was that the same should not be turned over to the Suttons until all the items of expense, as indicated in the letter, had been paid out of it, not by Sutton, but by Swan. The fact that the draft was made payable to both, is a matter of no consequence in the determination of this case, as the instructions of the above letter clearly shows that, to all intents and purposes, the draft was made payable to Swan, and that Suttons could obtain no part of it until after Swan had com-plied with the instructions of plaintiff in error, as embodied in

the 'letter. In the second paragraph of the above letter to Swan the plaintiff in error uses the following language:

"Before 'turning over any of the money, you must know that the buildings are fully completed in every particular, both outside and in, including painting outside, and then you will not go ahead with the loan or turn over any of the money, unless you know of your own knowledge that they have sufficient funds, including our loan to pay all bills of every kind and character so that there can be no mechanics' liens filed that might become prior to our mortgage, and you must have every one who furnishes either labor or material sign the waiver."

This was an instruction to Swan not to turn over any of the money to Suttons until the houses were completed, for he (Swan) could not until that time procure a waiver of all claimants for labor and material. We observe also that Swan was required in the letter to see that an equal amount of insurance was placed on each house. Also there was inclosed in said letter to Swan a rough pencil draft, or sketch, of the two houses, and he was instructed to see that the porches were built in strict accordance therewith, bathroom, etc., and after he had attended to all of these things he was directed to return the sketch and plans to the plaintiff in error, not to defendants in error. When the draft was sent to Swan on June 19th, nothing had been done by the Suttons except the execution of the application for the loan, which had been sent to Denver and approved by the plaintiff in error; the mortgages had not been executed; the insurance had not been taken out; the bonds had not been signed; the certificates of stock had not been issued. It was essential that plaintiff in error have some one in McAlester, at that particular time, to hold this money for the plaintiff in error until the mortgages had been prepared, the insurance policies issued, the bonds executed, the certificate of stock issued, and properly assigned, and until the houses were completed in order that all claims for labor and material should be satisfied, and until the abstract of title had been brought down to date, showing the mortgage, the payment of taxes, and that no other liens were of record against the property. All these items were to be paid by Swan out of the draft sent

by the company on the 19th. The plaintiff in error placed great confidence in Swan, not only as to his honesty in handling the money, but in his ability as well, for it was left entirely to him to determine when the mortgage, bonds, certificates, and insurance policies were properly executed, and he was the sole judge as to the form of the acknowledgment of the mortgage and other papers. He was also clothed with full power to judge of the abstract, as is seen from the following language from the letter above:

"You will not go ahead with the loan and turn over the money until the abstract has been continued, and you know of your own knowledge that our mortgage is a first lien in every particular."

Inasmuch as the abstract could not be completed until after all liens or claims for labor and material had been satisfied, it will be seen that during all the time the houses were building Swan held the money and expended it according to his own pleasure in and about the matters mentioned, and this, too, by direction of plaintiff in error.

In paragraph 8 of the letter, Swan was required to see that all taxes were paid, and was again prohibited from turning over any money until the abstract should read a certain way. Further, he was instructed to secure insurance, and is charged with the duty of taking out the policy with a "well-established Eastern company," and is strictly instructed not to turn over any money until the special mortgage forms prepared and sent by plaintiff in error are attached to the policy. In paragraph 10 he is given full and complete authority to say when the houses are completed, and enumerating every detail that must be done in this connection. In the next paragraph he is made the sole judge "that all parties who have furnished either labor or material on the building have signed a waiver, and he must determine whether or not these waivers are properly sworn to, and in accordance with the printed instructions thereon," and in the next paragraph he is required to ascertain who has performed labor and who has furnished material, and also to determine when all have signed proper waivers. He was also directed to instruct Suttons, how they

should pay on this loan, and in paragraph 13 we find this language: "Full payment of $20.80 will be due in July, and monthly thereafter. With delivery of passbook please give proper instructions as to future installments and oblige." Swan was thereby also given power to instruct the Suttons as to how the loan could be paid off. In the fourteenth paragraph he is directed and made the sole and only judge as to when all bills for recording, all bills for abstract and insurance premiums are to be paid out of the draft. In paragraph 15 he is also made the judge as to when all papers are in proper form. In view of this letter, and much additional testimony offered in line therewith by Suttons, plaintiff in error insists that Swan was not its agent for the purpose of accepting payment of the loan. It admits that he was its agent for all, or practically all, the matters and things hereinabove enumerated, and claims, also, that inasmuch as the draft was payable to Swan and the Suttons jointly, by the Suttons' indorsement thereof they made Swan their agent. This clearly is a mere subterfuge, as has plainly been seen by the letter transmitting the draft, for therein Swan was especially directed by plaintiff in error to retain the money in his own possession and to expend it in a manner left largely to his own discretion. Suttons could not by any manner have obtained the money themselves with or without having indorsed the draft. They did not object to the payment of these various items, and yet under the directions of the letter Swan was the only person who could make these payments and transact this business, and he was acting, not for the Suttons, but as the agent for the plaintiff in error, who recognized him in every way possible as such.

Agency is a question of fact to be determined as other facts by the jury, from the facts and circumstances of the case, under proper instructions by the court. The law of agency, in all the phases thereof applicable to this case, was most thoroughly and exhaustively treated by the trial judge in his instructions to the jury. Of these instructions only the sixth and ninth are properly excepted to and treated by plaintiff in error in its brief. We have read these two with care, and find that they fairly and

correctly state the law applicable to the phase of the case therein treated, and are unobjectionable. We have also read the instructions offered by the plaintiff in error, and refused by the court. There was no error in refusing the first, for it was in effect a peremptory instruction to find for the plaintiff in error, and inasmuch as there was a conflict in the testimony on the question of agency the court would not have been warranted in directing a verdict. *Fidelity Mut. Life Ins. Co. v. Stegall,* 27 Okla. 151, 111 Pac. 389; *Brown & Bridgeman v. Western Casket Co., infra,* 120 Pac. 1001.

The question not only of agency, but of the apparent authority of the agent, was fairly raised by the pleadings, and evidence was introduced by both parties on these issues, and the questions were properly submitted to the jury, under fair and comprehensive instructions by the court, and the jury having decided the issues of fact, thus submitted, in favor of the defendants in error, and against the plaintiff in error, which finding met with the approval of the trial court, we are not at liberty, nor do we feel disposed, to interfere with or disturb the same.

"The apparent authority of an agent is to be gathered from all the circumstances and evidence, and is a question of fact for the jury." (*Minn. Thresh. Mach. Co. v. Humphrey,* 27 Okla. 694, 117 Pac. 203; *Ricker National Bank v. Stone,* 21 Okla. 833, 97 Pac. 577; *Allen v. Kenyon, infra,* 119 Pac. 960.)

Swan, to all intents and purposes, was recognized and held out to the public by plaintiff in error as its general agent at McAlester, and empowered by it to do and perform all things necessary to further its interests there. So long as his services were of value and beneficial to the company, there was no objection made and no effort put forth to inform the public as to the limitations placed on his authority, but as soon as there was a possibility of loss such relationship was repudiated, and the public was held to a strict notice of the scope of his authority and the limitations placed upon his agency. As has been seen, he was authorized directly to do many things, and in one place in the letter was authorized specifically to instruct Suttons how the loan

could be paid off, and even though the express authority to accept payment of this loan cannot be shown in writing, yet it can be and is shown by the facts and circumstances and necessary inferences throughout the entire record.

Parties dealing with a known agent have a right to presume that the agency is general, and not special, and the presumption is that one known to be an agent is acting within the scope of his authority. 10 Ency. Ev. 10, and cases there cited.

The authority of an agent to receive payment for his principal must be proved by the party making payment; but proof need not be direct, it may be inferred from the circumstances of the case. 10 Ency. Ev. 8, and many cases cited.

In the case at bar there was much evidence offered on both sides on the question of agency and the authority of the agent; these controverted questions of fact were submitted to the jury under proper instructions, and, "Where there is evidence reasonably tending to sustain the issues on the part of the plaintiff, and the evidence on the part of the defendant conflicts therewith, the determination thereof is for the jury." *Gann v. Ball,* 26 Okla. 26, 110 Pac. 1067; *Taylor v. Insurance Co.* 25 Okla. 92, 105 Pac. 354, 138 Am. St. Rep. 906; *Caddo Natl. Bank v. Moore, infra,* 120 Pac. 1003; *Edwards v. Miller, infra,* 120 Pac. 996; *Allen v. Kenyon, infra,* 119 Pac. 960.

For the reasons above, the judgment of the superior court of Pittsburg county should be affirmed.

By the Court: It is so ordered.

All the Justices concur.