## DANIEL v. PAPPAS.

No. 11343—Opinion Filed Nov. 6, 1923.

1. **Contracts — Construction — Meaning of Words.**

The words of a contract are to be construed and understood in their ordinary and popular sense, unless a special meaning is given to them by usage, in which case the latter must be followed.

2. **Evidence — Parol Evidence as to Meaning of Words.**

Parol evidence may be introduced to show that certain words used in a written contract have a special meaning given to them by usage, and that the parties entered into said contract with knowledge of and in respect to such usage.

3. **Same — Intent of Parties to Contract.**

Where a contract is ambiguous or the intention of the parties is not clearly ascertainable from the contract, itself, parol evidence may be introduced to show the conduct of the parties and the circumstances under which the contract was made, to ascertain the intention of the parties at the time the contract was entered into.

4. **Principal and Agent—Agent's Authority—Private Instructions.**

Where an agent is held out as having the authority of a general agent, any private instructions or limitations upon his authority, not communicated or known to third persons dealing with such agent, will not be binding upon such third persons where the agent oversteps such limitations.

5. **Estoppel—Sufficiency of Pleading.**

A party entitled to an estoppel need not in all cases formally plead the estoppel. If the facts constituting the estoppel are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from Superior Court, Tulsa County; L. J. Martin, Judge.

Action by R. T. Daniel against Peter Pappas. Judgment for defendant, and plaintiff brings error. Affirmed.

Biddison & Campbell, for plaintiff in error.

Chas. B. Rogers and E. F. Caldwell, for defendant in error.

Opinion by JARMAN, C. This was an action by R. T. Daniel against Peter Pappas to enjoin the defendant from conducting a cafe or restaurant in a certain building leased by the plaintiff to the defendant and from furnishing meals and lunches and similar articles of food. Judgment was rendered for the defendant, from which the plaintiff brings error.

The plaintiff was the owner of a certain store room known as No. 107 E. Third street, located in the Daniel building in the city of Tulsa, Okla.; the plaintiff was in Florida and said property was in the hands of E. H. Young as the agent of the plaintiff for the purpose of handling and renting. On February 6, 1919, the defendant negotiated with E. H. Young for the leasing of said property for candy and confectionery store purposes, and upon an agreement being reached, a written contract was entered into which was signed by the defendant, and said contract was then forwarded by E. H. Young, agent, to the plaintiff for his signature, and which the plaintiff signed. This lease contract was for a term of three years and was to be used for the purposes set out in the following clause of said lease contract:

"It is further understood and agreed, that the premises herein leased will be used for candy and confectionery store purposes, only, and for no other object or purpose without the written consent of the party of the first part."

The defendant took possession of said store building and in addition to selling candies, sweetmeats, fruits, etc., the defendant commenced to sell and serve soup, roast beef, and certain other articles of food, which the plaintiff alleges is in violation of the terms of the lease contract which provides that said store building was to be used for "candy and confectionery purposes, only." The plaintiff further alleges that he owned the adjoining store room which was occupied by the Mecca cafe, operated by J. B. Melton under a lease with the plaintiff, which provides that the plaintiff was not to permit another restaurant or cafe to be operated in the Daniel building, and that the selling and serving of soup, roast beef, sweetmeats, and other articles of food by the defendant was in violation of the terms of the contract between the plaintiff and J. B. Melton which provides that no other restaurant or cafe should be operated in said building, and said petition alleges that the serving of the articles of food, above mentioned, by the defendant was not in line with the business of operating said business for candy and confectionery store purposes, but that it was the engaging in the cafe or restaurant business.

The defendant, in support of his answer, introduced evidence to show that at the time said lease contract was entered into, it was known by the plaintiff and his agent,

E. H. Young, that the defendant intended, in the operation of this property for candy and confectionery store purposes, to sell and serve light lunches and that both parties to said contract understood that by the term, "candy and confectionery store purposes," that the defendant, as a part of his business, could sell and serve light lunches; and that according to the local custom and usage, the term "confectionery store purposes" was considered and understood to be a place where light lunches are served in connection with candies, soft drinks, etc., and that the plaintiff understood and knew that this property was leased to be used in the light of such custom or usage; that the agent of the plaintiff was frequently at the building during the time the defendant was making preparations to occupy the same, and knew that the defendant was installing expensive fixtures for the serving of lunches in the front part of said building, and knew that the defendant was placing, in the rear part of the building, a steel range and cooking utensils for the purpose of preparing light lunches to be served in said building, and that he knew the defendant had placed on the windows and in the tiling in front of the building an advertisement that lunches were to be served in said building, and that said plaintiff knew that a refrigerator and ice box, tables, etc., for the purpose of keeping and serving food in the form of light lunches were being installed in the building at a great expense by the defendant, and the defendant opened business in said building and served light lunches for a considerable length of time and with the full knowledge of the plaintiff, and the plaintiff never made any protest nor raised any objection to the use of said building for such purposes. Evidence was introduced by the defendant to show that after the plaintiff returned from Florida to Tulsa he visited the defendant's place of business on numerous occasions and saw the defendant serving lunches and never made any objection thereto; that on July 11, 1919, the plaintiff entered into a contract with J. B. Melton for the leasing of the adjoining store building in which was then located the Mecca Cafe, operated by said J. B. Melton for a term of 27 months and in said lease contract there was included the following clause, to wit:

"It is agreed that parties occupying the adjoining store (referring to the building occupied by the defendant, Pappas,) will not be permitted to increase their lunches beyond what is being served at the present time. Hot lunches positively forbidden."

On the following day, July 12th, the plaintiff wrote the defendant to discontinue serving lunches.

The plaintiff first urges that the court erred in admitting testimony as to the custom of confectioneries in serving lunches. The plaintiff contends that the contract between the plaintiff and the defendant is plain and unambiguous, and that the intention of the parties is clearly ascertainable from the instrument itself; that the word "confectionery" has a well defined and accepted meaning, and that the words used in said contract should be given their ordinary and popular meaning in arriving at the intention of the parties; and that the defendant was permitted to vary, alter, and extend the terms of said contract by admitting evidence to show that by custom and usage confectioneries served lunches. As a general rule, the propositions of the plaintiff urged in support of this contention are correct, but the defendant contends that the term, "confectionery store purposes," pertains to a definite line of business, and has been given a special meaning by usage, and if such be the case, then the rule invoked by the plaintiff would not apply for the statute provides:

"The words of a contract are to be understood in their ordinary and popular sense * * * unless a special meaning is given to them by usage, in which case the latter must be followed." Section 5047, Comp. Stat. 1921; Crosbie v. Nat. Bank of Commerce, 86 Okla. 174. 207 Pac. 311.

Therefore, it was competent to show whether this term had a special meaning given by usage and to show what such usage or custom was. The Legislature, in enacting this statute, realized that words do not have a definite and fixed meaning at all times; that, when applied to a given line of business, a word may have a different meaning from that when used in its ordinary and popular sense. For illustration. the strict meaning of the term "drug store" is a place where drugs are handled, but under the special meaning given this term by usage, it is now a place where numerous articles other than drugs are handled, such as tobacco, cigars, cold drinks, candies, bathing suits, lunches, etc. The court, having fully considered all of the evidence in this case, made a general finding in favor of the defendant and, therefore, necessarily found that the term "confectionery store purposes" has been given a special meaning by usage, which implies and includes the right to serve lunches. We do not think that the finding and judgment of the court are against the weight of the evidence:

The next proposition urged by the plaintiff is that the court erred in admitting evidence of oral statements and negotiations leading up to the execution of the written contract. The plaintiff contends that, by admitting such testimony, an attempt was made to vary the term of a written contract and in violation of section 5035, Comp. Stat. 1921, which provides that the execution of a contract in writing supersedes all the oral negotiations concerning said contract which preceded or accompanied the execution thereof. If the contract were certain and unambiguous and the intention of the parties could be clearly ascertained from the language of the contract itself, then this rule, which the plaintiff seeks to invoke, would be well taken, but the term "confectionery store purposes," being a trade term or a term peculiarly applicable to a certain kind of business, its meaning in the ordinary and popular sense would not necessarily be its meaning as fixed by usage in connection with said business, and, therefore, in determining the meaning of the contract and the intention of the parties, it was proper to admit evidence to show the circumstances under which the contract was made and the conduct of the parties, for the paramount rule for the construction of a contract is to ascertain the intention of the parties at the time the contract is entered into. Prowant v. Sealy, 77 Okla. 244, 187 Pac. 235; Strange v. Hicks, 78 Okla. 1, 188 Pac. 347; D'Yarmett v. School District, 72 Oklahoma, 179 Pac. 20.

The plaintiff urges as his last proposition that the court erred in admitting evidence on the part of the defendant showing what equipment the defendant put in the leased premises and the cost thereof. Under this assignment of error, the plaintiff urges that the evidence, given by the agent, Young, as to his knowledge of improvements that were made by the defendant, the installing of certain fixtures, and the painting of signs advertising the serving of lunches, was prejudicial to the plaintiff and not binding upon him; for the reason that Mr. Young, as agent, did not have authority from the plaintiff to modify in any way the contract, and could not bind the plaintiff by any of his acts or conduct. In this connection one dealing with a known agent has a right to presume that the agency is general and not special, and the presumption is that one known to be an agent is acting within the scope of his authority. Where an agent is held out as having authority of a general agent, any private instructions or limitations upon his authority not communicated or known to those dealing with such agent, will not relieve the principal from liability incurred, where the agent oversteps such

limitations. Minn. Thresh. Mach. Co. v. Humphrey, 27 Okla. 694, 117 Pac. 203; Emerson Brantingham Imp. Co. v. Ritter, 69 Okla. 95, 170 Pac. 482; Midland Savings & Loan Co. v. Sutton et al., 30 Okla. 448, 120 Pac. 1007; Nat. Surety Co. v. Miozrany, 53 Okla. 322, 156 Pac. 651.

The plaintiff urges, under this assignment of error, that an estoppel was not pleaded by the defendant, and therefore, evidence that the plaintiff stood by and saw the defendant install equipment and make preparations at a large expense for the serving of lunches, was not competent, and was prejudicial error. We have carefully examined the answer of the defendant and while the defendant does not say in so many words that the plaintiff is estopped to deny that the defendant has a right to use said building for serving lunches, yet the facts constituting such an estoppel are sufficiently pleaded and the defendant is entitled to the benefit of the law arising therefrom, as held by this court in the case of Jones v. Kress & Co., 54 Okla. 194, 153 Pac. 655, to wit:

"A party entitled to an estoppel need not in all cases formally plead the estoppel. If the facts constituting the estoppel are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom."

The judgment of the lower court is affirmed.

By the Court: It is so ordered.