## GREAT SOUTHERN LIFE INS. CO. v. CARD.

No. 20272.   Oct. 23, 1934.

Embrey, Johnson & Tolbert, for plaintiff in error.

D. W. Buckner and Stacy Wells, for defendant in error.

McNEILL, J. This is a tort action to recover damages for loss of a real estate broker's commission.

Plaintiff alleged, in substance, that on or about January 1, 1924, A. C. Nicholson, acting as an officer of the defendant, the Great Southern Life Insurance Company, at Oklahoma City, orally requested the plaintiff to procure for said company certain real estate loans in Oklahoma and Kansas; that in compliance with such employment plain-

tiff procured certain applications for loans to said insurance company, among which was the application of Frank Maples for a loan in the sum of $30,000, and which was mailed to said Nicholson on January 7, 1924; that Nicholson returned the application; that said Nicholson took advantage of the knowledge which he had procured in reference to the application of Frank Maples and, through his codefendant, Dewey, attempted to procure from said Maples an application for the same loan, and thereafter said defendants Nicholson and Dewey did, on or about February 28, 1924, make said loan with said Frank Maples by reason of falsely and fraudulently representing to said Frank Maples that the loan was being made upon the application which had been procured by plaintiff, thereby intending to evade the payment of the usual and ordinary commission to plaintiff and to cheat and defraud said plaintiff out of said commission for the purpose of procuring the same for themselves.

Plaintiff further alleged that by reason of his employment and his procurement of the loan for said company, he complied with all the requirements on his part, and is entitled to the usual and ordinary commission paid for such services; that the charge for said loan to said Frank Maples as a commission amounted to $2,500, which was the usual and ordinary commission for such loan.

The defendant filed a verified answer, denying the allegations of plaintiff's petition by way of general denial and specifically denying that the defendant company through said Nicholson requested plaintiff to procure for said company any real estate loans, and alleged that said company never at any time in writing or orally contracted or agreed with plaintiff to pay plaintiff a reasonable commission, or any commission for procuring any loans.

The major questions concern the sufficiency of the evidence to support the contentions that plaintiff was employed by the insurance company to procure the loan from Maples, and that said company wrongfully rejected the application which plaintiff had submitted to the company and thereby caused him to lose the commission which Maples paid to another agent.

Plaintiff submitted evidence to the effect that he was engaged in the real estate and loan business at Gate, Beaver county, Okla.; that, on or about December 20, 1923, D. W. Buckner and Geo. I. Edmisson, while in Dallas, Tex., transacting business for the defendant company, recommended plaintiff to said Nicholson as a representative to secure loans for the company in the vicinity of Gate, Okla., and that upon the return of said Buckner and Edmisson, it was communicated to plaintiff that he had been recommended to the company to procure loans for it. Plaintiff was also advised that said Buckner was to meet the officers of said company at Oklahoma City on January 1, 1924; that on December 26, 1923, after receiving the communication of said recommendation, plaintiff secured an application for a ranch loan for $30,000 from Frank Maples and took the same with him when he accompanied Buckner and Edmisson to Oklahoma City on January 1, 1924, to meet said officers; and that he submitted to Nicholson said application. Plaintiff also testified that in the afternoon of said date he met Nicholson on the Santa Fe train and that he had a further conversation in reference to the Maple loan; that Nicholson advised plaintiff that he would make the loan if the security justified it upon examination, and requested the plaintiff to get a new application on a typewritten form and have the same signed by Mr. and Mrs. Maples before a notary public. Plaintiff also testified that he secured this application and mailed it to Mr. Nicholson on or about January 7, 1924. Mr. Nicholson admitted having a conversation with plaintiff at Oklahoma City on the train, and testified that while on the train he went into details with plaintiff about the manner and means of obtaining loans, because he had not had an opportunity to do so before; that the application which plaintiff had submitted was in long-hand; that it had no appraisal certificate showing the value of the property, which the company required; that the company required an appraisal certificate of two disinterested parties showing that this property which is to secure the loan is actually worth double the amount of the loan applied for; that there was no financial statement as to the borrower, or that he advised plaintiff that he must get this information and submit it to the company in the way that would be acceptable; that he advised plaintiff that he did not think the company could make this loan, because the company at that time was making ranch loans at about $4 per acre; that he advised plaintiff that the application showed that the rate of interest was six per cent., and that the company would not make it at six per cent., but if it did make the loan it would make it at seven per cent.

Subsequently, on January 7, 1924, plaintiff submitted by letter the application for

loan of Frank Maples for $30,000 to Mr. Nicholson at Dallas, Tex. On January 11, 1924, Mr. Nicholson acknowledged receipt of plaintiff's letter and advised plaintiff as follows:

"We are not in position to handle these loans at present as I find on returning to the office that we have made recent commitments for approximately $300,000 of loans. I will say, however, that I will likely be in your section of the country within the near future, and will call on you at that time and it is also likely that I will try to make some loans with you then. I am herewith returning the applications, and thank you for submitting the same."

Plaintiff testified that after he had received the letter from Mr. Nicholson dated January 11, 1924, he took up the matter of said loan of Frank Maples with Tom Cook of Buffalo, Okla., another real estate agent who was engaged in securing ranch loans; that his object in doing so was to get Mr. Maples his loan; that he gave him a copy of the application for said loan some time about January 14 or 15, 1924; that Mr. Cook stated that he was going to take the matter up with Mr. Dewey of Amarillo, who was making the application through the Great Southern Life Insurance Company; that he informed Mr. Cook that this company had refused to make the loan, but that if he could get the loan through they would divide the commission.

Mr. Dewey, who procured the application upon which the loan was made, testified that he was in the loan business at Amarillo, Tex., and had been so engaged for about ten years; that he was acquainted with Frank Maples and knew the plaintiff; that in April, 1922, he saw Mr. Maples about getting an application for a loan on his ranch for about $65,000; that he made various efforts to secure such a loan; that he had secured maps, data, and exhaustive information about the character and extent of Mr. Maples' ranch; that he had submitted the loan to the American National Life Insurance Company; that the company inspected the land and then advised that it would consider the loan for $55,000; that this was unsatisfactory to Mr. Maples; that he personally deposited $200 for expenses; which he lost in that transaction; that after he had failed to get Mr. Maples a loan in April, 1922, he procured another application on June 3, 1922, which he presented to the Missouri State Life Insurance Company; that was for $65,000 for the entire 11,103.86 acres; that loan was rejected due to cattle depression; that his expenses which he had incurred and lost on both applications

amounted to $433.43; that after he had made a trip to Ashland, Kan., in the latter part of 1923, he acquired some information and corresponded with Mr. Maples about a loan on his north ranch; that about January 1, 1924, Mr. Maples wrote to him that he had an application pending for a loan, but that he did not recall that he had stated that it was plaintiff with whom he had made the application; that Mr. Maples had advised him that he had called the matter off with plaintiff and that it was satisfactory for him to go ahead with the application; that he carried the application direct to Dallas and presented the matter to Mr. Nicholson; that he had taken the matter up with Mr. Nicholson two or three days before he came to get his application signed up by Mr. Maples; that he was not an agent of the Great Southern Life Insurance Company, and did not represent them in any way.

The witness also testified that he received no information from Mr. Cook relative to the Maples loan; that he had secured this information in the year 1922, when he was presenting the loan to the Missouri State Life Insurance Company, which rejected the same.

As we view this entire record, it was incumbent upon plaintiff to prove the essential fact that he was employed by the defendant company to procure the instant loan. In order for such relationship to exist, proof must be submitted to establish that fact.

This cause appears to have been tried by the defendant upon the theory that the defendant did not employ Card to procure loans for the insurance company, and that if it did so employ said Card, said company did not agree to pay any commission to Card, and that Card was to obtain his commission from the borrower, Frank Maples.

Defendant requested certain instructions. No. 3 being to the effect that the insurance company would not be liable to the plaintiff unless the defendant company, or Mr. Nicholson for the company, previously employed the plaintiff to act as the company's agent in soliciting such applications for loans. Instruction No. 5 was to the effect that if Nicholson requested plaintiff to submit the application for a loan, and this was rejected, plaintiff was not entitled to recover, unless the jury found that Nicholson expressly promised Card that the company would pay him a commission on such loan, and that Card in pursuance of such promise became and was the moving cause in inducing the company to make the loan.

Unquestionably, the defendant Nicholson was acting as the manager of the investment department for the Great Southern Life Insurance Company. The letterhead of the company designates him as manager of said department. In case of Raleigh & G. R. Co. v. Pullman Co., 122 Ga. 700, 50 S. E. 1008, the Supreme Court of Georgia said:

"The term 'general manager,' are words of large meaning. In and of themselves they imply duties and responsibilities which would devolve upon a person having the management and control of the corporate affairs. By giving such a title to this officer, the corporation holds him out to the world as its managing agent, its alter ego, as the person having general and supreme authority as the immediate representative of the directors in the conduct of the corporate affairs and in its dealings with the public. To allow a corporation to confer such a title upon one of its officers and thus hold him out to the world as possessing the large responsibilities and powers which are to be implied from his title, and then to permit it to repudiate engagements into which he has entered within the scope of such implied powers, would be to sanction the perpetration of a fraud; and this the courts will never do except under the stress of the most mandatory requirements of the law."

In the case of Atlas Assurance Co., Ltd., of London, England, v. The Hub, Inc., 109 Okla. 101, 235 P. 172, this court held:

"A party, in dealing with a known agent, has a right to presume that the agency is general, and not special; and the presumption is that one known to be an agent is acting within the scope of his authority. Midland Savings & Loan Co. v. Sutton, 30 Okla. 448, 120 P. 1007: and where an agent is held out as having authority of a general agent, any private instructions or limitations upon his authority, not communicated or known to those dealing with such agent, will not relieve the principal from liability incurred, where the agent oversteps such limitations. Daniel v. Pappas, 93 Okla. 165, 220 P. 355."

Counsel for defendant urge in their brief that Nicholson, being only an agent, was not authorized to employ plaintiff for the company: that no attempt was made by Nicholson or defendant to employ plaintiff: that plaintiff had no such interest in the contract as entitled him to sue; and that the law would not allow Nicholson, whose interest in the negotiation was adverse to that of Maples, to employ plaintiff who for months had been in the very negotiation going on the agent and representative of Maples, for there was no evidence that Maples knew or assented to any such employment.

The real question involved depends upon whether Card was employed by the defendant company. The evidence upon this question of employment is conflicting, but it was sufficient to present that issue to the jury. The jury found that there was such employment. This court does not weigh conflicting evidence in law cases. The plaintiff testified, in substance, that he was employed by Nicholson; this evidence was corroborated in part by other testimony and by facts and circumstances in the case. Plaintiff secured the amended application of Maples for a loan on January 7, 1934, and sent it to the defendant company; this application was returned on January 11, 1934, accompanied by a letter rejecting the application; on January 29, 1934, Dewey, the other agent, obtained the application of Maples for a loan: the question of good faith of the company is called into question. The jury resolved that issue in favor of the plaintiff.

There was evidence to show that reasonable commission amounted to $2,500. The jury allowed damages for one-half of that sum. As we view the various questions raised by the defendant, we conclude that the major questions were those of fact. These questions were submitted to the jury under proper instructions, and the evidence reasonably sustains the verdict of the jury. This court will not review the evidence when the same is conflicting and determine the weight thereof and substitute its judgment for the judgment rendered on the verdict.

We find no prejudicial error. Judgment affirmed.

RILEY, C. J., and SWINDALL, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., and ANDREWS. OSBORN, and BAYLESS, JJ., absent.