## Mercer Mining and Manufacturing Co. *versus* Mc-Kee's Adm'r.

1. McKee, by written agreement, sold the coal on his farm to defendants for 10 cents for each ton " of screened coal mined and removed from his land." The defendants mined and screened and removed both lump and nut coal. *Held*, that evidence was inadmissible to show that "screened coal" is understood amongst coal merchants and miners to include only lump coal ; or to prove the relative value and quality of lump and nut coal for the purpose of showing that nut coal is not " screened coal," in its common acceptation ; that àt the time of the contract there was no market for nut coal, and that it was removed from necessity and did not pay expenses.

2. The meaning of a term used in a contract and applied to an article in a trade or business, may be proved by persons engaged in it.

3. The defendants having screened and removed both kinds of coal, were estopped to allege that either was not " screened coal."

November 19th 1874. Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Mercer county :* Of October and November Term 1874, No. 241.

This was an action of covenant brought October 7th 1870, by James McKee against the Mercer Mining and Manufacturing Company. The plaintiff having died after the commencement of the suit, his death was suggested, and Alexander McKee, his administrator, substituted as plaintiff.

The action grew out of the covenants in an agreement between James McKee of the first part and Hugh Wick of the second part ; the defendants became the owners of the interests of Wick by virtue of the agreement, and subject to his liabilities under it.

The agreement was dated August 27th 1863. By it McKee sold and conveyed to Wick, " his heirs and assigns, all the mineral coal, limestone and iron ore, in, upon and under the farm in the township of Findley, * * * containing 100 ·acres," with privilege to enter, dig out, remove, &c. * * *

" And the said party of the second part, by himself or assigns, agrees to pay to the party of the first part, his legal representatives or assigns, the sum of ten cents for each ton (of 2240 lbs.) of screened coal mined and removed from said lands herein described, and the price of rent of the ore mined and removed from said lands for such gross ton of 2240 lbs. shall be ·ten cents for screened or cleaned ore, and ten cents for 2240 lbs. of limestone ; and the party of the second part is to pay all United States taxes on minerals mined."

The case was tried August 19th 1874, before Maxwell, P. J.

The plaintiff gave the agreement in evidence.

He called E. Hosack, who testified : " I was in the employ of the defendants. I was dumping coal, attending to it after it was screened. One-fifth nut coal. Lump coal runs over first screen.

Nut coal drops through to second screen. Nut coal was always shipped away. All shipped except what was used or sold in the neighborhood."

C. Meek testified: " The quality of coal that passed over the second screen is nut coal; part used and the balance shipped."

The plaintiff gave evidence on the same point, and also for the purpose of showing the amount of coal mined—and rested.

The defendants then proposed to prove by A. Burnett and others, that the term " screened coal," used in the contract of the parties, is taken and understood among coal merchants and miners, to include only lump coal, and not what is called and known as nut coal.

That nut coal is not merchantable coal or screened coal, in the common and general acceptation of that term.

Plaintiff objected to the above evidence:—

1. Because the contract between the parties being in writing its construction is a question for the court.

2. If not a question of construction for the court, it is one of fact for the jury to determine from the evidence.

3. The case is one not requiring the testimony of experts.

4. The evidence offered would contradict the written agreement of the parties.

Defendants also proposed to prove the relative value and quality of lump and nut coal, for the purpose of showing that nut coal is not screened coal in the common acceptation of that term, and that at the time the contract was made between the parties there was no market for nut coal in this section, and that the same was removed from the bank as a matter of necessity and did not pay the expense of mining and marketing.

Plaintiff objected to this offer because it was irrelevant.

Both offers were rejected, and several bills of exception sealed.

The defendants gave evidence as to the amount of coal mined.

The plaintiff's first point was:—

As a matter of law the plaintiff is, by the express terms of the lease, entitled to recover ten cents for each and every ton of coal mined by the defendants, and remaining above either of the two screens described by the witnesses, provided the same was screened and removed for the purpose of sale or profit.

The answer of the court was:—

" To the first point, we answer that the plaintiff has a right to recover ten cents for each ton of 2240 lbs. of screened coal and which has been mined and removed from the lands, and if you believe that there were two screens and two kinds of coal there screened called lump and nut coal, then he has a right to recover ten cents for each ton of 2240 lbs. of either lump or nut coal mined and removed from the lands."

[Mercer Mining Co. *v.* McKee's Adm'r.]

The defendants' points were:—

1. The term "screened coal," used by the parties in this contract, includes only merchantable lump coal that is screened, and not what is known as nut coal.

2. The term "screened coal" includes only such screened coal as would satisfy a contract where one person had agreed to deliver a certain quantity of screened coal to another person at a stipulated price, to wit: merchantable coal screened and not nut coal, which is inferior in quality though screened.

3. Nut coal is not screened coal in the general and common acceptation of the term as used in this district.

These points were answered in the negative.

The verdict was for the plaintiff.

The defendants took a writ of error; they assigned for error the rejection of their offers of evidence and the refusal of their points.

*Griffith & Mason,* for plaintiff in error.—The *meaning of words* in a written contract may be shown by parol: Gibson *v.* Tyson, 5 Watts 34; Case *v.* Cushman, 3 W. & S. 544; Carey *v.* Bright, 8 P. F. Smith 70.

*McDermitt & Miller,* for defendant in error, furnished no paper book.

Mr. Justice MERCUR delivered the opinion of the court, January 4th 1875.

The question here lies within a narrow compass. The defendant's intestate owned coal lands. He entered into a written agreement with the plaintiff in error, by which, *inter alia*, the latter was to have the coal thereon, and agreed to pay therefor "the sum of ten cents for each ton (of 2240 lbs.) of screened coal mined and removed from said lands."

In this action the defendant in error claimed to recover for the coal only, which the company had actually screened and removed from the lands. The company showed that they had taken two sizes or kinds of coal. That in preparing it for market they used two screens; by the use of one they prepared "lump coal," by the use of the other "nut coal." They denied their liability to pay for the latter, and offered to prove that it was not known among coal dealers or miners as screened coal in the general acceptance of that term.

It is unquestionably true, as a general rule, that the meaning of a term or name given to any particular article in a trade or business, may be proved by persons engaged therein, when that term or name is used in a contract. This is admitted for the purpose of ascertaining the meaning with which the word was used by the parties. This rule of evidence is too well settled to be now controverted.

[Mercer Mining Co. v. McKee's Adm'r.]

The question here, however, is as to the application of this law to the undisputed facts in the case. The plaintiffs in error did screen the nut coal, and did ship it to market. They had no right to screen and remove any coal without paying for it. If the contention was whether the company had omitted to screen and remove the largest practicable quantity of coal for market, then the relevancy of the testimony offered would be evident. So if the defendant in error had denied the right of the company to screen the nut coal, and had forbidden its removal, the evidence would have been admissible. Here, however, the company had elected and determined what coal they would screen and remove. The defendant assented to it; he accepted and ratified the act; the the minds of the parties thus met; the act of the company made it screened coal in fact; the defendant confirmed it; the company is now estopped from controverting it; they cannot now show that it ought not to have the name and character which their acts have given to it. Nor would evidence to prove that when the contract was made there was no market in that vicinity for nut coal, and that it did not pay the expenses of mining and marketing, change the result. Whether it was then and there in demand is unimportant. It has since been in demand and has been removed and sold. The question whether it was mined and marketed at a loss or at a profit to the company, is wholly irrelevant. The contract recognises no such distinction. The liability of the company to the defendant for the coal taken cannot be affected by it.

We see no error in the rejection of the testimony, nor in the answer and charge of the learned judge.

Judgment affirmed.