F. BRODY, Appellant, v. G. W. CHITTENDEN.

**Mortgages:** "FURNITURE" DEFINED. On an issue whether certain articles kept in a place of business were covered by a mortgage of "furniture," an instruction that the appliances, implements, instruments, and like articles used in carrying on the business conducted at the place would not be furniture was error.

**Evidence:** COMPETENCY OF WITNESS: *Cross-examination.* A banker who had no particular knowledge of the jewelry business testified that he sold defendant a part of defendant's stock and that he took a mortgage upon it. *Held,*

 a It was improper to ask him *on cross-examination* as to defendant's using certain tools in his business and the use made therein of regulators.

 b The witness was incompetent.

SAME. In replevin for articles claimed under a mortgage covering a jeweler's stock of goods by a general description, including merchandise, furniture and fixtures, where the defense is that the articles named were not included therein, evidence of jewelers and dealers in jewelry, watches, etc., as to how these articles are regarded by the trade in relation to being part of a jewelry stock, is admissible.

INTENT. In replevin for goods claimed under a mortgage given for the price of the goods, which were sold to the defendant by the mortgagee, it was competent to ask defendant whether a clock claimed to be included in the mortgage was not listed at the time of the sale with the show case and other fixtures included in the mortgage, which described in general terms a stock of goods, furniture, fixtures, etc., since it was material to show how the clock was treated by the parties at the time of the sale.

Appeal: WAIVER. When plaintiffs ask an instruction that the jury has nothing to do with the stock involved in a replevin suit, they cannot complain because the court charged that the stock had a certain value.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

SATURDAY, OCTOBER 22, 1898.

ACTION of replevin, involving the right to the possession of the following goods: One Seth Thomas regulator, one Swiss regulator, one jardiniere, one jeweler's scales, one Natchet trial case, one diamond scale, one pair of sleeve buttons, two pairs of eardrops, one watch movement, one pair glasses, one watch, one gold pin, one chain, one garnet pin and one chain. Plaintiff claims he is entitled to the possession thereof as assignee of two chattel mortgages executed by defendant,—one to Holland and the other to J. A. McKinney. Defendant denies that the property was included in either of these mortgages, and further pleads that he did not own the last nine items of property, but held the same as bailee for the true owners thereof. The case was tried to a jury, resulting in a verdict for defendant. Plaintiff filed a motion for a new trial, and the court ordered that the verdict, in so far as it related to the Swiss clock, the jardiniere, and the three bench stools, which were included therein, be set aside. The motion was otherwise overruled, and judgment was rendered on the verdict. Plaintiff appeals.—*Reversed.*

*Ayers, Woodin & Ayers* for appellant.

*Read & Read* for appellee.

DEEMER, C. J.—On and prior to the twenty-first day of December, 1895, defendant was engaged in the jewelry business in the city of Des Moines. He also handled glass, queen's and decorated ware, and optical goods. On the last-named date he executed the mortgages upon which this action is bottomed. The description of the property is practically the same in each, and reads as follows: "All of my stock of goods, jewelry, silverware, glass and queensware, of every kind and description, and all goods and merchandise now or hereafter in my store in the building and room known as 406 East Sixth (6th) street, in the city of Des Moines, Iowa, and all furniture and fixtures therein, including safes; said stock consisting principally of diamonds, watches, watch cases and movements, clocks, jewelry, optical goods, silverware, glass and queensware, and decorated goods, and other articles of merchandise." It is conceded that no one of the first six items of property named in the preceding statement was a part of defendant's stock of goods, and it is practically conceded that none of them may properly be said to be fixtures. The sole question in the case seemed to be whether or not they, or any of them, were intended to be included in the mortgage under the designation of "furniture." That question was submitted to the jury, and it found for the defendant. As the court set aside the verdict in so far as it related to the Swiss clock, the jardiniere, and three bench stools, we have only to inquire as to the other items of property. The court instructed, in the fourth paragraph of its charge, as follows: "Generally, furniture consists of those articles which are used and prepared to be used in fitting up the place in question to adapt it as a place for the purpose for which it is intended to be used. The machinery, tools, apparatus, appliances, implements, instruments, and such like articles that are used in carrying on the business conducted at the place would not be furniture." This instruction is complained of, and we think the error assigned must be sustained. The word "furniture" ordinarily

means that with which anything is supplied; the equipment or outfit of a trade or business; whatever may be supplied to a stock of goods or to a business, to make it convenient, useful, or gainful. As said in the case of *Fore v. Hibbard,* 63 Ala. 412, in construing a mortgage of a drug-store furniture and fixtures, "the articles, utensils, and implements used in a drug store, or other store, as the furniture thereof, differ in kind according to the purpose which they are intended to subserve; yet, being put and employed in the several purposes, as the equipment thereof, for ornament, or to promote comfort, or to facilitate the business therein done, and being kept or intended to be kept for those or some other purpose, they pertain to such places, respectively, and constitute the furniture thereof." See, also, *Bell v. Golding,* 27 Ind. 173. The instruction says that appliances, implements, instruments, and such like articles used in carrying on the business would not be furniture. Herein lies the error of the instruction. Certainly the implements and instruments used in carrying on the business may be a part of the furnishings of the business.

II. One J. A. McKinney, the cashier of a bank to which one of the mortgages was given, was a witness for the plaintiff, and testified to selling the defendant a part of the mortgaged goods, including the Seth Thomas regulator, and also to the taking of the mortgage upon the stock. On cross-examination he was asked, over plaintiff's objection, as to defendant's using certain instruments and tools in his business as a jewelryman, and as to the use made by jewelers of regulators. This was clearly not cross-examination; and it was also incompetent, for the witness said he was a banker and had no particular knowledge of the jewelry business.

III. It was for the jury to determine, under proper instructions from the court, whether the property in controversy, or any part of it, was covered by the mortgage. This was largely a question of intent. In arriving at this intent, the situation of the parties and all the surrounding circum-

stances were proper to be considered. *Myers v. Snyder,* 96 Iowa, 107. Plaintiff asked the defendant when on the witness stand, if the Seth Thomas regulator was not listed with the show case and other fixtures when he bought the stock of McKinney. Objection to the question on the ground of immateriality was sustained. As McKinney sold the stock to Chittenden and took a mortgage back for the purchase price,—this mortgage being one under which plaintiff claims,—it seems to us that it was quite material to show how this regulator was treated by the parties at the time of the sale.

IV. Certain jewelers, and dealers in jewelry, watches, etc., were placed on the witness stand by the plaintiff, and asked as to how regulators were regarded by the trade,—whether as part of the stock, as fixtures, or as tools. Some of them were also asked as to how diamond scales were treated and regarded. Objections to these questions were sustained. We think the evidence should have been admitted. When a word is used in a technical or peculiar sense, as applicable to any trade or business, it is proper to receive testimony of witnesses having special knowledge of such words as to the meaning attached to it. *Brown v. Brown,* 8 Metc. (Mass.) 573; *Miller v. Stevens,* 100 Mass. 518; *Downs v. Sprague,* 1 Abb. Dec. 550; *Eaton v. Smith,* 20 Pick. 156; *Collender v. Dunsmore,* 55 N. Y. 200; *Newhall v. Appleton,* 114 N. Y. 140 (21 N. E. Rep. 105); Greenleaf Evidence, sections 292, 294; *Schaub v. Brewing Co.,* 80 Tex. 634 (16 S. W. Rep. 429). Evidence as to the meaning attributed to these words, or as to how regulators and scales are regarded by the trade, was proper to be considered in arriving at the identity of the goods intended to be covered by the mortgage.

V. Complaint is made of the first instruction, wherein the jury is told that the goods had a certain value. As the plaintiff asked an instruction to the effect that the jury had nothing to do with the question of value, and should disregard all the evidence on the subject, he is not in position to complain.

VI.   Some other questions are discussed by counsel, but, as they are not likely to arise upon a re-trial, we do not consider them.   For the errors pointed out, the judgment is REVERSED.