COOKE v. ELLIS. (No. 8611.)

(Court of Civil Appeals of Texas. Ft. Worth.
April 28, 1917. Rehearing Denied
June 2, 1917.)

1. ACTION ⬤⟶47 — NATURE — CONTRACT OR
TORT—MONEY RECEIVED.

A petition by a tenant against his landlord's
grantee, alleging plaintiff's right, under con-
tract, to two-thirds of the crop, and that at de-
fendant's request plaintiff consented that the
crop should be used as pasturage, and that de-
fendant collected the sum of $516.10, and that
the defendant is now indebted to plaintiff for
two-thirds thereof which defendant though often
requested so to do, has failed and refused to
pay plaintiff, was not objectionable as an at-
tempt to set up two inconsistent and separate
causes of action, one an action ex delicto, and
the other an action ex contractu, but it states
a cause of action for money had and received,
with implied promise to pay.

[Ed. Note.—For other cases, see Action, Cent.
Dig. §§ 469, 470, 472–489.]

2. LANDLORD AND TENANT ⬤⟶332—RIGHT OF
PURCHASER—POSSESSION BY VENDOR'S TEN-
ANT—EVIDENCE—ADMISSIBILITY.

In an action by a tenant under a lease for
one year to recover, from one purchasing from
his landlord, for money received by the purchas-
er for pasturage, evidence that tenant had a
verbal contract with the former landlord, where-
by he was to receive two-thirds of everything
raised on the place, was admissible, and not
subject to the objection that it was with refer-
ence to a contract between plaintiff and another
not a party to this suit; since the rental con-
tract testified about was for the year only, and
therefore was one that might lie in parol, and
since a purchaser of land must take notice of
the character of title held by one in open, visi-
ble, and unequivocal possession.

[Ed. Note.—For other cases, see Landlord and
Tenant, Cent. Dig. §§ 1363, 1400.]

3. LANDLORD AND TENANT ⬤⟶332—RIGHTS
OF TENANT AS AGAINST LANDLORD'S GRAN-
TEE—EVIDENCE.

In an action by a tenant for one year
against his landlord's grantee for money receiv-
ed by defendant for pasturage, in order to es-
tablish plaintiff's right to two-thirds of the
Johnson grass grown, after crops had been cut
and the harvesting had been abandoned, it was
incumbent on him to establish that he was so
entitled under his contract with his former
landlords.

[Ed. Note.—For other cases, see Landlord and
Tenant, Cent. Dig. §§ 1363, 1400.]

4. CUSTOMS AND USAGES ⬤⟶19(2)—ORAL
LEASE—ADMISSIBILITY OF EVIDENCE.

Evidence that it was the custom for the
tenant to get the Johnson grass on a place aft-
er cutting off his crop was not admissible, in
the absence of pleading to that effect, since the
custom asserted was not intended to be repre-
sented as one of universal application, but a
special local custom, and the term "crops" is
not to be so interpreted as to embrace the
Johnson grass on that part of the rented prem-
ises not planted by plaintiff.

[Ed. Note.—For other cases, see Customs and
Usages, Cent. Dig. §§ 42, 43, 45.]

5. LANDLORD AND TENANT ⬤⟶332—LEASE—
JURY QUESTION.

Evidence held to justify a jury finding that
plaintiff was to receive only his proportion of
the crops grown, and that he would not be per-
mitted to delay his surrender of the premises in
order to cut or otherwise utilize the Johnson
grass growing on the stubble land.

[Ed. Note.—For other cases, see Landlord and
Tenant, Cent. Dig. §§ 1363, 1400.]

6. LANDLORD AND TENANT ⬤⟶332—ORAL
LEASE—INSTRUCTIONS.

As the pleadings did not charge a wrongful
appropriation of the crop, or an appropriation
thereof without the consent of the plaintiff, but
that the defendant collected the money for the
pasturage with the plaintiff's consent, and that
thereby there arose an implied promise on de-
fendant's part to pay plaintiff his proportion
thereof, the giving of an instruction that, "if
you also find that the defendant, without the
consent of the plaintiff, appropriated said crop
to his own use and benefit, then, and in that
event, you will find for the plaintiff for two-
thirds of the usual market value, if any, of the
crop at the time it was so appropriated," was
error.

[Ed. Note.—For other cases, see Landlord and
Tenant, Cent. Dig. §§ 1363, 1400.]

Buck, J., dissenting in part.

Error from Tarrant County Court; Chas.
T. Prewitt, Judge.

Suit by A. L. Ellis against W. L. Cooke.
Judgment for plaintiff, and defendant brings
error. Reversed and remanded.

Bryan, Stone & Wade and W. C. Blalock,
all of Ft. Worth, for plaintiff in error. Wm.
R. Booth, of Ft. Worth, for defendant in er-
ror.

BUCK, J. During 1915 A. L. Ellis was
the tenant on the farm of Chas. Leuschner
and wife, said farm being situated north of
Ft. Worth and in the vicinity of the town of
Saginaw. Ellis was cultivating the farm on
shares, and the cultivated land was planted
in wheat and oats. In June, 1915, Leuschner
and wife sold the farm to W. L. Cooke; the
sale being made through J. G. Wilhoit as
agent. Before the trade was made Cooke
inquired of Leuschner, and perhaps Wilhoit,
whether he could depend on Ellis' giving pos-
session at once. Leuschner testified that:

"Mr. Ellis agreed with me to surrender im-
mediate possession of the farm in the event
I sold the place. * * * I told Mr. Ellis that
I was on a trade to trade the farm off—told
him I had a chance to trade it off, and, if Mr.
Cooke wanted possession of it, would he give
him possession, and Mr. Ellis said, 'I won't
stand in your way at all, I never did stand in
your way.' * * * I told Mr. Cooke that El-
lis had agreed to give immediate possession."

Ellis testified:

"I never saw Mr. Cooke, and never spoke
to him until after he had made the trade for
the farm, and came out to the place. * * *
I stated to Mr. Cooke on that occasion that I
would give him possession after the crop came
off. He asked me what the contract was with
Leuschner, and when I was to give possession,
and I told him 'After the crop came off.'"

Shortly after Cooke purchased the proper-
ty, he went out to see it, and on that trip met
Ellis and had a conversation with him con-
cerning the giving of possession by Ellis, tes-
tified to in the quotation hereinabove. At
that time there was standing in the field

some wheat, the stand being very thin, and a conversation occurred between Cooke and Ellis as to what use it should be put to. Cooke decided that he would pasture some government mules on it, and later secured the mules and pastured them on the wheat stubble and grass, and received for said pasturage some $516.10. On August 19, 1916, Ellis filed suit against Cooke for two-thirds of the amount received for the pasturage of the mules, alleging:

That plaintiff, by virtue of his contract with the owner of the premises, was entitled to two-thirds of "the wheat, oats, and grass crop grown on said premises as his compensation for raising the same"; that in June, 1912, the defendant purchased the premises from the plaintiff's landlord, "and at the time of said purchase the defendant knew, or by ordinary diligence could and would have known, of the interest which plaintiff had in said wheat crop; that plaintiff had the hands all paid for, and had all arrangements made to gather said crop, when the defendant put in his appearance on said farm and represented to plaintiff that both parties could realize more money out of said crop by pasturing the same than by harvesting it, and at the special instance and request of the defendant plaintiff consented that said crop should be pastured; that at the special instance and request of the defendant the plaintiff looked after the cattle placed in said pasture, and drew water for them and attended to them throughout the pasture season, which ended on, to wit, the 4th day of August, 1915, and for which the defendant collected the sum of $516.10, and that the defendant is now indebted to plaintiff two-thirds of said $516.10, which equals $344.05; that the defendant, though often requested so to do, has failed and refused, and still fails and refuses, to pay the plaintiff said $344.05, or to make settlement with plaintiff for two-thirds of said crop."

Defendant demurred generally and specially to plaintiff's petition, and further pleaded that plaintiff had agreed to surrender immediate possession of said premises to defendant, otherwise defendant would not have purchased the property, and denied that defendant and plaintiff had any agreement or understanding to the effect that plaintiff was to receive two-thirds, or any other portion, of the money paid for pasturage, or that plaintiff had looked after the stock while in the pasture, or that defendant had requested him so to do.

The cause was submitted to the jury under a general charge, and a verdict returned for plaintiff for $344.06, less $25 deducted as plaintiff's part of the expenses incurred in order to make the fences stock-proof, etc. From this judgment the defendant has prosecuted a writ of error.

[1] Plaintiff in error's first and second assignments are directed to the action of the court in overruling exceptions to plaintiff's petition. It is asserted that the petition fails to set up a cause of action, either for conversion or trespass, or an action upon a contract; but the petition is an attempt to set up two inconsistent and separate causes of action, one an action ex delicto, and the other an action ex contractu. While the petition is not so full or definite in its terms as it might be, yet we are of the opinion that it is not subject to a general demurrer, or to the special exceptions urged. Evidently there was no intention to charge a trespass, or a conversion of the crops growing on the land. It is evident from the pleadings that defendant entered upon the premises and placed thereon the live stock with the full consent of plaintiff. Nor is there any purpose evidenced in the pleadings to charge that defendant collected the money for their pasturage without the consent of plaintiff. The suit is rather for money had and received by the defendant, with an implied promise to pay the plaintiff his claimed proportion. Pearce et al. v. Dyess et al., 45 Tex. Civ. App. 406, 101 S. W. 549, 550.

[2] Under the third assignment, objection is made to the admission by the court of the testimony of plaintiff, to the effect that he had a verbal contract with Mrs. Leuschner whereby he was to receive two-thirds of everything raised on the place; the objection being that said testimony is with reference to a contract between plaintiff and another not a party to this suit, and that the testimony is therefore irrelevant and immaterial. Since the rental contract testified about was for the year only, and therefore was one that might lie in parol, and since it constituted the basis of plaintiff's right of possession of the premises, we think the evidence was admissible. A purchaser of land must take notice of the character of title held by one in open, visible, and unequivocal possession. Glendenning et al. v. Bell, 70 Tex. 632, 8 S. W. 324; Paris Grocer Co. v. Burks, 101 Tex. 106, 105 S. W. 174; Tolar v. Development Co., 153 S. W. 911. The assignment is overruled.

[3] The fourth assignment charges error in the trial court's permitting the plaintiff to testify that:

"It was the custom for the tenant to get the Johnson grass on a place after cutting off his crop, for the reason that there was no pleading of any custom, there was nothing in the pleading that would charge the defendant with notice of a custom," etc.

The evidence of plaintiff himself strongly tends to show that, after cutting one or two swaths through his wheat, he concluded that the stand was too thin to justify the harvesting, and that he abandoned the idea of harvesting it before the defendant put the mules on the place. The plaintiff agreed that he told Leuschner and defendant both that he would surrender possession of the premises as soon as his crop "came off." But plaintiff claimed that the Johnson grass growing on the stubble land where the oats had been cut, as well as that growing on the wheat land, which had not been cut, constituted a "part of the crop," in which he had a two-thirds interest. In order to establish his right to two-thirds of the Johnson grass grown after the oats had been cut and the harvesting of the wheat had been abandoned, it was incumbent on him to establish that

he was so entitled under the contract with the Leuschners. He testified that he told Cooke:

"That my contract with Leuschner was that I would get off as soon as my wheat and oats were cut. Johnson grass is always considered in the crop the pasture; of course I was to have the Johnson grass. I did not agree with Leuschner to get off as quick as I threshed my wheat and oats. I said, 'As soon as my crop comes off—hay and all.' * * * I· was a tenant on that farm during the year 1915, having rented it from Mrs. Leuschner under a verbal contract. I was to pay her one-third of the crop delivered on the cars, and she was to pay her one-third of the expenses; that is, the threshing expenses and any work done in making the crop. We did not have any agreement as to the kind of crop I should make. I sowed it in wheat and oats."

[4] It will be noted from the testimony quoted, as well as from other testimony of like character in the record, that there was a sharp controversy presented as to whether plaintiff was entitled, under his contract with the Leuschners, to two-thirds of the Johnson grass. In order to establish such asserted right plaintiff attempted to show the custom prevailing. The majority are of the opinion that, under the circumstances of this case, such testimony was not admissible, in the absence of pleading to that effect. While plaintiff pleaded that under said contract he was to have "two-thirds of the wheat, oats, and grass crop grown on said premises," yet his testimony on the subject of the contract with the owner, of whom he rented, is:

"I was to pay her one-third of the crop delivered on the cars, and she was to pay her one-third of· the expenses; that is, the threshing expenses and any work done in making the crop. We did not have any agreement as to the kind of crop I should make. I sowed it in wheat and oats."

Neither here nor elsewhere have we found evidence that "Johnson grass" was specifically mentioned in the rental contract. It seems evident from the whole testimony that appellee's claim to two-thirds of the Johnson grass rests upon the "custom" of which he testified, and not upon any specific terms of his rental contract as he states it. In such cases—i. e., when the plaintiff's right of recovery rests upon a custom alone—we think it should be alleged. 12 Cyc. 1097, and notes. The evidence shows that the farm in question was a Johnson grass farm, a part only of which was by appellee put in cultivation and sown in wheat and oats, and hence the word "crops" might be reasonably construed as including the Johnson grass growing up and harvested together with such grains; but in the absence of an allegation of ambiguity in the terms of the contract, or of a custom in the light of which it is to be so interpreted, we do not think the term "crops" is to be so interpreted as to embrace the Johnson grass on that part of the rented premises not planted by appellee. See Bouvier's Law Dictionary, title "Crop," and Emblements, and 1 Words and Phrases (2d Se-

ries) title "Crop," p. 1158. The oats had been cut at the time of the purchase by defendant of the farm, and the allegations with reference to plaintiff's interest in the wheat crop strongly tend to show that the pleader did not intend to assert any interest in the Johnson grass.

[5] Under the evidence, in the absence of this testimony in regard to the custom, the jury might have reasonably concluded that the contract between the plaintiff and the Leuschners was that the plaintiff was to receive only his proportion of the oats and· wheat grown, and that he would not be permitted to delay his surrender of the premises in order to cut or otherwise utilize the Johnson grass growing up on the stubble land. It is a general rule that a special custom must be pleaded, while a general custom need not be pleaded, but may be given in evidence at the trial, or even judicially noticed by the court for the first time on appeal. Lawson on Usages and Customs (1881 Ed.) p. 124, § 64. Where a particular custom or a local usage is relied on, the same must be specially pleaded in order to authorize evidence to establish it. Ordinarily not only must the special custom be pleaded, but the allegation must be made that the party sought to be charged with its effect knew of its existence, though it is held in certain cases, where the party sought to be charged with the assumption of the custom was engaged in the particular business in which the custom is alleged to have prevailed, that the allegation as to his knowledge of such custom is not necessary. Id.

If the custom relied on by defendant in error in this case and sought to be established by his testimony was a general custom, so universal and notorious in its character that its existence was generally recognized by the public, and of which courts could properly take judicial cognizance, then neither proof nor allegation was necessary, and proof thereof admitted over objection would not be error. But if such custom was confined to a particular business or locality, and was not so notorious that persons purchasing or dealing in lands would be presumed, as a matter of law, to have so purchased and dealt with reference to such custom, then we think that both proof and allegation would have been necessary, and the evidence, in the absence of an appropriate allegation, was inadmissible. It is true that the defendant in error testified that it was "the custom of the country, if there is any Johnson grass comes up after you get the crop off, the tenant gets the grass"; yet the majority, at least, are of the opinion that, taking into consideration the limitation shown in the development of the qualification of the witness to testify upon the existence of the custom, and the connection in which the evidence was introduced, the custom asserted was not intended to be represented as one of universal application among farmers, but rather as to the

particular locality where this farm was located; and if such be the proper and justifiable construction, of which the writer has some doubt, the admission of this testimony, in the absence of appropriate pleading was error. Standard Paint Co. v. San Antonio Warehouse Co., 136 S. W. 1150, 1152; Anderson v. Rogge, 28 S. W. 106; Norwood v. Fire Ins. Co., 13 Tex. Civ. App. 475, 35 S. W. 717; Gano v. Palo Pinto Co., 71 Tex. 99, 8 S. W. 634; Brady v. Richey et al., 187 S. W. 508. The majority are of the opinion that this assignment should be sustained, and it is so ordered.

The writer is of the opinion that the cases of T. & P. Ry. Co. v. Coggin et al., 44 Tex. Civ. App. 423, 99 S. W. 1053, by this court, H. & T. C. Ry. Co. v. Hill, 60 Tex. Civ. App. 214, 128 S. W 445, by the Dallas Court of Appeals, and the Iowa case of Brody v. Chittenden, 106 Iowa, 524, 76 N. W. 1009, are authority for the admission of the testimony complained of. In the last-cited case it was held that it was admissible in the absence of pleading to show by jewelers and dealers in jewelry, watches, etc., that a "Seth Thomas Regulator" would be included in the term "furniture and fixtures" pertaining to the jewelry business. In this case is cited Schaub v. Brewing Co., 80 Tex. 634, 16 S. W. 429. So far as the question here involved is concerned, the respective rights of the defendant in error and plaintiff in error depend upon the contract had between defendant in error and his original landlord, Leuschner. And the same construction must be given to the contract and the same rules as to the admission of testimony must be applied as would be given and applied were the controversy in fact between Ellis and Leuschner, because Cooke assumed, by reason of his purchase of the land, the relation of landlord to Ellis, such relation being governed by the terms of the contract made between Ellis and Leuschner. Hence the writer is of the opinion that, even though it should be contended that such original contract only provided that the tenant should receive two-thirds of the "crop" raised on the premises, evidence was admissible to show what was meant by the term "crop," and that this evidence was admissible for the purpose of showing that within the term "crop" the Johnson grass raised on the land after the cultivated crops had been cut was included.

[6] Under the seventh assignment plaintiff in error complains of the court's submitting to the jury the following:

"If you also find that the defendant, without the consent of the plaintiff, appropriated said crop to his own use and benefit, then and in that event you will find for the plaintiff for two-thirds of the usual market value, if any, of the crop at the time it was so appropriated."

We are of the opinion that the objection to the charge must be sustained. As we construe the pleadings, as before stated, they did not charge a wrongful appropriation of the crop, or an appropriation thereof without the consent of the plaintiff, but rather that the defendant collected the money for the pasturage with the plaintiff's consent, and thereby there arose an implied promise on defendant's part to pay plaintiff his proportion thereof. The same question in another form is raised under the eighth assignment, and we are of the opinion that the court erred in submitting the question of conversion of all under the pleading and proof.

For the reasons given, the judgment below is reversed, and the cause remanded.

BUCK, J., dissenting, as indicated.