### BOLAND v. BALLAINE.

(Circuit Court of Appeals, Ninth Circuit. June 7, 1920.)

No. 3421.

1. **Malicious prosecution** ⬅71(3)—**Malice question for jury.**

In an action for malicious prosecution, malice is a question of fact for the jury, and is inferable from the fact of want of probable cause.

2. **Malicious prosecution** ⬅60(1)—**Evidence to rebut inference of malice erroneously excluded.**

Where plaintiff in an action for malicious prosecution of a civil action was permitted, over objection, to testify to matters occurring after such action was commenced, for the purpose of showing that its further prosecution was without justification and malicious, it was error to exclude testimony of defendant tending to rebut such inference, on the ground that it related to matters occurring after such suit was commenced.

3. **Malicious prosecution** ⬅66—**Measure of damages for loss of sales of property defined.**

In an action for malicious prosecution of a civil action, the pendency of which, as claimed, prevented plaintiff from selling lots in a town site, he is not permitted to show generally depreciation in value of the lots

between the time of commencement of the action and its termination, but is confined to actual damages sustained through loss of particular sales due to the clouding of his title.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by J. E. Ballaine against W. J. Boland and others. Judgment for plaintiff, and defendant Boland brings error. Reversed.

See, also, 259 Fed. 183, 170 C. C. A. 251.

This is an action sounding in damages, instituted by the defendant in error against plaintiff in error and W. E. Stavert and F. C. Jemmett to recover for the alleged malicious prosecution of a civil action entitled: "In the District Court in and for the Territory of Alaska, Third Division. Alaska Northern Railway Company, a Corporation, Plaintiff, v. Alaska Central Railway Company, a Corporation, Tanana Construction Company, a Corporation, John E. Ballaine, Frank L. Ballaine, et al., Defendants." Stavert and Jemmett were not served, and the action proceeded against Boland singly. The Alaska Central Railway Company had previously, and during the year 1909, defaulted. A foreclosure was had of its bonds, and its property was sold to F. C. Jemmett, trustee for the Sovereign Bank of Canada and other bondholders. Subsequently the Alaska Northern Railway Company was organized, and the assets of the Alaska Central were transferred and assigned to it by Jemmett, trustee. The stocks and bonds of the Alaska Northern were turned over to the defendants in the present action as a committee representing several banks in the Dominion of Canada, the owners of the stocks and bonds of the Alaska Central. These stocks and bonds were afterwards sold by the committee to the general government, but there were reserved from the transfer 320 acres of land known as the Poland homestead. Plaintiff and Frank L. Ballaine, his brother, claimed to be the owners of a tract of land on which the town site of Seward is located, which town was designated by the President as the terminus of a system of railways to be constructed by the government.

In view of this state of facts, it is alleged, in effect, that the defendants and others who claim to be the owners of the Poland tract, conspiring together for the purpose of defrauding and injuring plaintiff and preventing him from selling his lots in the town of Seward, instituted in the name of the Alaska Northern Railway Company a false, fictitious, and malicious suit against plaintiff, and falsely and maliciously alleged in said suit that the railway company was the owner of all the property of plaintiff in the Seward town site, and filed a notice of lis pendens, thereby clouding plaintiff's title and preventing him from selling his property and placing the same upon the market. The suit, after trial, terminated in plaintiff's favor.

By its fifteenth paragraph the complaint alleged: "That at the time of the commencement of said action by said defendants this plaintiff notified said defendants of the loss and damages this plaintiff would sustain by reason of said action, and filing said lis pendens, and repeatedly offered to show conclusive record evidence that said action was groundless, without merit, and the allegations of said complaint were false, and said defendants ignored such statements and refused to dismiss said action." General damages are demanded.

The answer controverts the material allegations of the complaint, and sets up that the action was brought in the utmost good faith and upon the advice of counsel that complainant had good cause for prosecuting the same.

There was a motion for a directed verdict on the part of defendant Boland at the close of plaintiff's case, which was denied. The motion was renewed at the close of the entire testimony, and this was also denied. The ruling of the court in each instance is assigned as error. Other assignments of error follow.

Bronson, Robinson & Jones, of Seattle, Wash., for plaintiff in error.

Carroll B. Graves and Lyons & Orton, all of Seattle, Wash., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). Without attempting to detail the testimony bearing upon the subject, suffice it to say that we are of the opinion that the District Court was right in submitting the cause to the jury.

[1] As to want of probable cause, there was the testimony of Haight, which has a special bearing upon the subject; but more particularly, the testimony of Ballaine touching his request and demand of defendant, plaintiff in error here, that defendant dismiss the suit after it had been begun, and cease to continue its prosecution against him. Malice is a question of fact for the jury, and is inferable from the fact of want of probable cause. 26 Cyc. 22, 23.

There was evidence submitted for the purpose of showing that defendant acted upon the advice of counsel in bringing the action. If such were the case—if the defendant acted on such advice, and proceeded under an honest belief that his cause was meritorious, and was thus induced and led to institute it—he would not be liable. But that was a question for the jury to determine (Steward v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116), and, as the instructions of the court are not here, we must assume that the jury was properly advised upon the subject.

Preliminary to what is to follow, it should be stated that the theory of the suit complained against was that plaintiff, Ballaine, being an officer of the Alaska Central, procured for himself, but in the name of his brother, Frank L. Ballaine, title to the land, by diverting funds under his control belonging to said railway company to pay for it, namely, $3,000, to pay for soldier's additional homestead scrip with which to obtain patent to the land, and an additional $4,000 to secure the relinquishment of one Mary Lowell, who at the time occupied and claimed the land as her homestead, in fraud of the rights of the railway company, and that the Ballaines were holding the title constructively as trustees for the railway company. One Keeler, who was the disbursing officer of the railway company, is said to have paid the $4,000 over to Mary Lowell for her relinquishment.

[2] At the trial, Ballaine, the plaintiff, defendant in error here, as a witness in his own behalf, in answer to the question, "Between the commencement of that Alaska Northern suit and the time of its trial, had you ever any talk with Mr. Boland, or either of the other defendants, or any of them?" was permitted to testify, over objections, as follows:

"Several different places. 'I wired him immediately on my notice that this suit had been filed. I wired Mr. Boland and Mr. Jemmett, offering to open my books and have the books of the bank and the railway company opened to their inspection, to prove the falsity of all their charges. That was within a day or two after the announcement in the Times that the suit had been filed. The first time I met Mr. Boland in person after the filing of the suit, as I recall it, was in New York, in about July—no, about August, some time in August—when we took the deposition of Mr. Keeler, who had been the disbursing agent for the Shedds, and the treasurer of the Tanana Construction Company when I owned the controlling interest in the construction company,

and I there renewed my offer to Mr. Boland to open my books, and have the books of the companies and the books of the banks opened to his inspection, or the inspection of anybody whom he might appoint, to prove the entire falsity of all their charges, and they are complete, and Mr. Boland was present as the representative of the plaintiff, the Alaska Northern, at the taking of the deposition of Mr. Keeler in New York, when Mr. Keeler explained in detail the matter of the payment of this $4,000, which was subsequently submitted to the court in Seward. Then subsequently, in about the fore part of October of the same year—oh, no, in the latter part of September of the same year— Mr. Boland arrived in Seattle, en route to Valdez and Seward, to attend the trial of this case. We then took the depositions of bankers here in Seattle, who had kept the accounts of the Alaska Central, and the Tanana Construction Company, and my personal accounts. During the taking of the depositions the bank books were all open to the inspection of Mr. Boland. I invited him to call for anything he wished to call for, but reserved nothing. I offered to produce every document that he required, to prove the falsity, and that invitation was never acted upon by him at any time. * * * In the taking of the depositions here in Seattle, for the banks, and in the taking of Mr. Keeler's deposition, the bank books were opened, showing the transfer to my personal account, to the account of the Tanana Construction Company, of this $4,000."

Boland, testifying in his own behalf respecting the matters concerning which Ballaine had testified, related that he was shown a prospectus representing that the town site of Seward, or the terminus, would be opened up for the benefit of the railway companies, and as their property; that it was a printed folder, issued by the officers of the defendant construction company or the railway company, which Ballaine afterwards admitted by his evidence he caused to be issued. Witness was then asked, "Did Mr. Ballaine admit that he caused that prospectus to be issued?" But over objection he was not allowed to answer, because the incident transpired subsequent to the time when the suit came on for trial. After stating that he met Keeler at the Waldorf-Astoria, and that Keeler then told him he paid the money because he understood the town site was the property of the Alaska Central, the witness, over the objection of counsel, was not permitted to explain what Keeler said, and that his evidence was in contradiction of his statement, for the reason that the statement was not made before the suit was brought. In view of the fact that Ballaine had testified fully as to matters that came to his knowledge after the suit was instituted, which was permitted as showing reason why Boland should have discontinued the suit, Boland should have been permitted to rebut such testimony, although the rebuttal had relation to conversations and alleged admissions made after the suit came on for trial. This was prejudicial error.

[3] As it relates to the question of damages, plaintiff was permitted, over objections, to give his estimate of the values of the lots and blocks owned by him in Seward prior to the institution of the suit of which he complains, and then, also over objection, he was permitted to contrast those values with values after the suit and time for appeal had terminated, and was of the opinion that the latter values sustained a relation to the former of about 50 per cent. It is objected that this inquiry was speculative and visionary, and does not constitute a proper basis upon which to predicate the measure of damages applicable.

In this we concur. There seems to be a dearth of authority upon the particular question. In 26 Cyc. 14, the law is thus stated:

"Where there has been an arrest of the person, or seizure of property, in or in connection with a civil action, where the damage is exceptional, peculiar, or particularized and actual, malicious prosecution lies, according to the prevailing American rule, if the other essentials of the wrong be made out."

The effect of the suit complained of, it is alleged, was to cloud plaintiff's title, and inferentially to disparage sales. But it is not claimed, nor could it be, that the plaintiff was prevented from selling all his lots and blocks in the town of Seward. So that plaintiff's testimony that the property had declined in value 50 per cent. gave a false basis for determining the damages he had sustained by reason of the prosecution of the suit. Indeed, the basis was so vague and speculative that no certain or proper deductions as to damages could be made. We are impressed that plaintiff is confined to the establishment of actual damages sustained, which must be shown by loss of particular sales that eventuated by reason of the clouding of his title. He is not permitted to show generally that his property depreciated in value between the time of the commencement of the suit and the lapse of the time for appeal, and it was error to allow this testimony to go to the jury.

For this and the preceding error, the judgment of the court below will be reversed, and the cause remanded, for such other and further proceeding as may seem appropriate.