## DANIEL v. PAPPAS.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1926.)

No. 7088.

**1. Malicious prosecution ⬤⇒56—Burden of proving pendency of appeal from judgment complained of in suit for malicious prosecution rests on defendant.**

Assuming that pendency of an appeal from the judgment in the suit complained of is a defense to an action for malicious prosecution, the burden of pleading and proving such defense rests on defendant.

**2. Malicious prosecution ⬤⇒71(2)—Probable cause for prosecution is question for jury on disputed facts.**

In an action for malicious prosecution, where the question of probable cause depends on disputed questions of fact, a mixed question of law and fact is presented for determination by the jury.

**3. Malicious prosecution ⬤⇒71(3)—Malice as element of malicious prosecution is question for jury.**

In action for malicious prosecution, malice is question of fact for jury, which may infer malice from want of probable cause.

**4. Malicious prosecution ⬤⇒71(4)—Defense of advice of counsel held question for jury.**

Advice of counsel is not a defense, to an action for malicious prosecution, unless defendant honestly and in good faith made full and fair disclosure to counsel of all material facts within his knowledge, and of which he could obtain knowledge by exercise of reasonable diligence, and where the question whether such disclosure was depends on controverted issues of fact it is one for the jury.

**5. Malicious prosecution ⬤⇒67—Loss of profits from interruption of business is recoverable in action for malicious prosecution, where amount is made reasonably certain by proof.**

Loss of profits resulting from interruption of an established business may be recovered in an action for malicious prosecution, where the amount of loss is made reasonably certain by proof, and length of time required for a new enterprise to become an established business depends on the character of the business.

**6. Evidence ⬤⇒317(11)—Testimony held competent on question of average receipts from a business.**

On the question of average receipts from a business, testimony of a creditor of the proprietor, based on seeing him count daily receipts and general observation of amount of business done is not hearsay nor conjecture, and is competent.

**7. Evidence ⬤⇒457—Parol evidence is admissible as to definite meaning given words used in written contract by local usage.**

Where words used in a written contract have a definite meaning by local usage at the time and place of making the contract, parol evidence as to that meaning is admissible.

**8. Principal and agent ⬤⇒115(1)—Principal is bound by statement of agent within apparent scope of authority; "confectionary store purposes"; "general agent."**

An agent to manage buildings and lease and collect the rents therefor is a "general agent" respecting the property, and statements made by him to a lessee when making a lease of a storeroom for "confectionary store purposes" that the term included light lunches was within the apparent scope of his authority, and binding on his principal.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Agency or Agent.]

**9. Principal and agent ⬤⇒115(1)—Principal held estopped by statement and conduct of agent.**

Where an agent, acting within his apparent authority, stated to a lessee that the expressed purpose for which he leased a storeroom included the serving of lunches, and made no objection when lessee expended several thousand dollars in equipping the room for that purpose, the owner was estopped to assert a forfeiture of the lease because of such use.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Franklin E. Kennamer, Judge.

Action at law by Peter Pappas against R. T. Daniel. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles West and Everett Petry, both of Tulsa, Okl., for plaintiff in error.

Charles B. Rogers and E. F. Cadwell, both of Tulsa, Okl., for defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This is an action to recover damages for alleged malicious prosecution brought by Peter Pappas against R. T. Daniel. Pappas obtained a verdict in the sum of $4,000, judgment was entered on the verdict, and Daniel has sued out a writ of error to this court.

Daniel resided at Dallas, Tex. He owned several business buildings in Tulsa, Okl. He employed as his agent to secure tenants therefor, collect the rentals therefrom, and to generally supervise and care for such properties, one E. H. Young of Tulsa.

On February 6, 1919, Daniel leased to Pappas by a written lease a storeroom in the Daniel Building, in Tulsa, Okl. The term of the lease was from March 15, 1919, to March 14, 1922. The lease contained the following covenant: "It is further understood and agreed that the premises herein leased will be used for candy and confectionery store purposes only and for no other object or

purpose without the written consent of said party of the first part." (Daniel.)

Pappas testified that, at the time the lease was executed, Young stated to him that the language "confectionery store purposes" included lunches. Pappas further testified that he expended $22,000 in remodeling the building to suit his purposes, and in installing fixtures and equipment; that among the various fixtures installed were steam tables and other equipment which could be used only in the serving of hot foods and lunches; that he put in a tile front with the word "candy" on one side, and the word "lunch" on the other; that Young was present at different times when the alterations were being made and the fixtures were being installed, and saw the steam tables and the tile front with the word "lunch" thereon; and that Young at no time advised Pappas any objection would be made to his conducting a lunch business in the leased premises.

The evidence showed that at the time the lease was executed there was a well-establishd and general custom existing in Tulsa and vicinity for confectionery stores to serve lunches, and that the words "confectionery store purposes" were understood to include the serving and sale of hot lunches. Pappas opened his place of business on May 24, 1919. He served and sold light lunches.

At the time Pappas entered into the lease with Daniel, one J. B. Melton held a lease from Daniel on another portion of the same building for a café and restaurant, at a rental of $400 per month. On July 11, 1919, Daniel and Melton entered into a new lease in which the rental was increased to $600 a month, and in which Daniel agreed to prevent Pappas from serving hot lunches. On July 13, 1919, Daniel served a written notice upon Pappas to the effect that Pappas was serving articles of food which did not come within the meaning of the word "confectionery," and was violating the terms of his lease, and that, if Pappas persisted in such violation, Daniel would be compelled to bring legal proceedings against him.

On July 26, 1919, Daniel commenced a proceeding in the district court of Tulsa county, Okl. to enjoin Pappas from selling meals and lunches upon the leased premises, and on August 5, 1919, secured a temporary injunction. This injunction remained in force until March 27, 1920, when Pappas obtained a decree in his favor dissolving the injunction and dismissing the suit. From this judgment, Daniel appealed to the Supreme Court of Oklahoma. On November 6, 1923, the Supreme Court of Oklahoma

filed an opinion in the cause on appeal affirming the judgment of the lower court, 93 Okl. 165, 220 P. 355.

Pappas testified that his gross receipts from May 24, 1919, to August 5, 1919, averaged $250 per day; that the receipts from his lunch business ran between $100 and $125 per day; that, after deducting his average daily expenses, he made a profit during the period of from $50 to $75 per day; and that, during the period he was restrained from serving lunches by the injunction, his daily gross receipts averaged $100 per day, and his expenses averaged $100 per day. This testimony of Pappas was in certain particulars corroborated by the testimony of one Jones, a dealer in restaurant fixtures. Jones testified that, from noting the number of customers, the size of the tickets coming to the cash register, and from seeing Pappas count up his cash at the close of business, he estimated that his gross receipts prior to the injunction ran from $150 to $250 per day. Jones testified that he took account of the business Pappas was doing because he had sold Pappas a large amount of fixtures on credit. Jones further testified that the business decreased very perceptibly after the injunction was served. While the temporary injunction was in force, a number of other confectionery stores were opened in the vicinity of the Pappas store. Pappas paid out as attorneys' fees in defending the injunction suit $600.

No mandate from the Supreme Court directing the affirmance of the decree in the injunction suit was introduced in evidence.

[1] The first contention of counsel for Daniel is that there was no proof that the injunction suit ever finally terminated, because there was no proof that a mandate of the Supreme Court of the state affirming the decree in that suit was ever issued to or spread upon the record of the trial court. The courts are divided on the effect of an appeal from a judgment in the original action on the right to maintain an action for malicious prosecution. One line of authorities sustains the view that the right to commence the action for malicious prosecution accrues on the rendition of the judgment in the original proceeding by a court having jurisdiction, and that the right to maintain the action is not affected by an appeal. These authorities hold, however, that the pendency of an appeal may be ground for staying the malicious prosecution action until the appeal has been determined. Marks v. Townsend, 97 N. Y. 590; Levering v. National Bank of Morrow County, 87 Ohio St. 117, 100 N. E. 322, 43

L. R. A. (N. S.) 611, Ann. Cas. 1913E, 917; Foster v. Denison, 19 R. I. 351, 36 A. 93; 18 R. C. L. p. 26, § 14. The other line of authorities holds that the pendency of an appeal from the judgment rendered in the proceeding complained of is a defense to an action for malicious prosecution. Howell v. Edwards, 30 N. C. 516; Nebenzahl v. Townsend, 10 Daly (N. Y.) 232, 61 How. Prac. (N. Y.) 353, 359; Griffith v. Ward, 20 U. C. Q. B. 31. For a discussion of the two rules and the authorities which support the same, see Luby v. Bennett, 111 Wis. 613, 87 N. W. 804, 56 L. R. A. 261, 87 Am. St. Rep. 897. It is unnecessary in the instant case to determine which line of authorities lays down the correct principle. If we assume that the pendency of an appeal from a judgment in the proceeding complained of is a defense to an action for malicious prosecution, the burden of pleading and proving such defense rests upon the defendant in the action for malicious prosecution. Luby v. Bennett, supra; Carter v. Paige, 80 Cal. 390, 22 P. 188. Neither the pleadings nor proof in the instant case showed the pendency of an appeal from the decree in the original proceeding at the time this action was commenced. On the other hand, the proof indicates that the appeal had then been disposed of by an affirmance of the decree.

[2] Counsel for Daniel next contend that the evidence did not show want of probable cause and malice. Whether or not probable cause existed depended upon disputed questions of fact. It therefore presented a mixed question of law and fact for the determination of the jury under proper instructions. Stewart v. Sonneborn, 98 U. S. 187, 194, 25 L. Ed. 116; Sanders v. Palmer (C. C. A. 2) 55 F. 217; L. Bucki & Son Lbr. Co. v. Atlantic Lbr. Co. (C. C. A. 5) 121 F. 233. There was substantial evidence to warrant the conclusion that there was no real foundation for the injunction suit, and that it was not prosecuted in good faith, but because of the agreement contained in the new lease with Melton to prohibit Pappas from serving hot lunches for which Melton paid an increased rental of $200 per month.

[3, 4] Malice was a question of fact for the jury, and the jury had a right to infer malice from a want of probable cause. Stewart v. Sonneborn, supra; Larocque v. Dorsey (C. C. A. 2) 299 F. 556; Boland v. Ballaine (C. C. A. 9) 266 F. 22. Advice of counsel was no defense, unless Daniel honestly and in good faith made a full and fair disclosure to his counsel of all the material facts within his knowledge, and of which he could obtain

knowledge by the exercise of reasonable diligence. Stewart v. Sonneborn, supra; Blunk v. Atchison, T. & S. F. R. Co. (C. C.) 38 F. 311; 38 C. J. pp. 432–435, §§ 78, 79. Whether such disclosure was made depended upon controverted issues of fact which were properly submitted to the jury, and it decided that issue adversely to Daniel.

[5] Counsel for Daniel next contend that the proof of damages resulting from an interruption of the business was not admissible, because it was not shown that the business was a regular and established one. The loss of profits resulting from the interruption of an established business may be recovered where the amount of such loss is made reasonably certain by proof. Central Coal & Coke Co. v. Hartman (C. C. A. 8) 111 F. 96; 17 C. J. p. 795, § 117. When a new enterprise would become a regular and established business would depend upon the character of the business. What would be a sufficient time for a department store to become an established business would not apply to a restaurant. Usually, a confectionery business is established in a very short time. We think the proof showed that the confectionery business of Pappas had become an established business when it was interrupted by the injunction suit. Pappas showed the amount of his capital investment and his daily receipts and his daily operating expenses for a considerable period before and during the time he was prevented from serving lunches by reason of the temporary injunction. This proof formed a basis for a reasonably certain estimate of the amount of profits which he lost because of the injunction suit. Central Coal & Coke Co. v. Hartman, supra.

[6] Counsel for Daniel next contend that the testimony of Jones was hearsay, guess, and conjecture. The trial court instructed Jones to base his answers upon what he knew and saw, and not upon what Pappas told him. Jones was observing the business of Pappas because he had extended the latter credit. He noticed the size of the sales checks, watched Pappas when the latter was counting up his daily receipts, and observed generally the amount of business Pappas was doing, and from these observations was able to make a reasonably accurate estimate of the gross receipts from such business. The evidence was not hearsay, and it was not conjectural.

[7] Counsel for Daniel next contend that the evidence of the meaning of the phrase "confectionery store purposes" was not admissible. Where words used in a written

contract have a definite meaning by local usage, at the time and place of making the contract, parol evidence as to the meaning of such words is admissible. Wood v. Allen, 111 Iowa, 97, 82 N. W. 451; Miles v. Vermont Fruit Co., 98 Vt. 1, 124 A. 559; Daniel v. Pappas, 93 Okl. 165, 220 P. 355; 22 C. J. p. 1207, § 1605.

The construction of a contract for the sale of a stock of merchandise was involved in Wood v. Allen, supra. The contract used the term "dry goods." At the trial, defendant offered witnesses to prove what the term "dry goods" meant to merchants and business men in the community in which the stock was located. This evidence was rejected, and the ruling was assigned as error. The court said: "These rulings were manifestly erroneous. In the construction of mercantile contracts, parol evidence is admissible to show that terms used therein have acquired, by the custom of the locality or by the usage of trade, a peculiar significance; and this is true, although the terms used may not in themselves appear to be ambiguous. Such evidence does not contradict the terms of the contract, but simply applies them to the subject-matter. Walls v. Bailey, 49 N. Y. 464 [10 Am. Rep. 407]. Thus, evidence as to custom and usage has been admitted to explain the words: 'Fur,' Astor v. Insurance Co., 7 Cow. [N. Y.] 202; 'roots,' Coit v. Insurance Co., 7 Johns. [N. Y.] 385 [5 Am. Dec. 282]; 'barrels,' Miller v. Stevens, 100 Mass. 518 [1 Am. Rep. 139, 97 Am. Dec. 123]; 'C. O. D.,' Collender v. Dinsmore, 55 N. Y. 200 [14 Am. Rep. 224]; 'screened coal,' Manufacturing Co. v. McKee's Adm'r, 77 Pa. 170; '1,000 shingles,' Soutier v. Kellerman, 18 Mo. 509; 'thousand feet,' Brown v. Brooks, 25 Pa. 210; 'fancy goods, and Yankee notion store,' Barnum v. Insurance Co., 97 N. Y. 188; 'product,' Stewart v. Smith, 28 Ill. 397; 'outstanding accounts,' McCulsky v. Klosterman, 20 Or. 108, 25 P. 366, 10 L. R. A. 785; 'furniture and fixtures,' Brody v. Chittenden, 106 Iowa, 524, 76 N. W. 1009; 'top buggies with poles,' Manufacturing Co. v. Randall, 62 Iowa, 245, 17 N. W. 507." The evidence showed that it had become the established custom at the time the lease in question was entered into in Tulsa and vicinity for confectionery stores to serve lunches. In employing the language "confectionery store purposes," the parties no doubt had in mind the business usually and ordinarily conducted in a confectionery store. We think the evidence was properly received.

[8,9] Counsel for Daniel further contend that Young was an agent of limited authority; that the knowledge and conduct of Young relied upon as an estoppel were not binding upon Daniel; and that the evidence thereof was improperly received.

Young told Pappas at the time the lease was executed that the language "confectionery store purposes" included light lunches. Young stood by and permitted Pappas to invest large sums in the installation of fixtures and equipment for the purpose of serving light lunches. He at no time advised Pappas that any objection would be made to the latter selling and serving light lunches. These matters were relied upon by Pappas as an estoppel against Daniel.

Young negotiated the leases, collected the rentals, and had the general supervision and care of all the buildings owned by Daniel at Tulsa. He was therefore a general agent. Fishbaugh v. Spunaugle, 118 Iowa, 337, 92 N. W. 58; Jaques v. Todd, 3 Wend. (N. Y.) 83, 90; Liddell v. Sahline, 55 Ark. 627, 17 S. W. 705; De Turck v. Matz, 180 Pa. 347, 36 A. 861; 2 C. J. p. 427, § 15. "A principal is as conclusively bound to innocent third parties by the act of his agent in the exercise of the apparent authority within the scope of his agency with which his master clothes him as he is by the actual authority conferred upon him." Lamon v. Speer Hdwe. Co. (C. C. A. 8) 198 F. 453; Schiffer v. Anderson (C. C. A. 8) 146 F. 457; Ætna Indemnity Co. v. Ladd (C. C. A. 9) 135 F. 636; Dysart v. Mo. K. & T. Ry. Co. (C. C. A. 8) 122 F. 228; Gowen v. Bush (C. C. A. 8) 76 F. 349. The statements and acts of Young above referred to were incident to his duties as such agent. They were such as are usually performed by an agent employed to lease real estate, collect rentals, and to supervise and care for the leased premises. They were within the scope of Young's apparent authority. Pappas denied knowledge of any private instructions to Young or any limitation on his apparent authority. He had the right, in the absence of such knowledge, to rely upon such acts and statements of Young. We therefore conclude that the court did not err in receiving evidence thereof.

The other matters assigned as error are not argued by counsel for Daniel, and are therefore waived. Braden v. U. S. (C. C. A. 8) 270 F. 441, 442; Weare v. U. S. (C. C. A. 8) 1 F.(2d) 617, 618.

The judgment is therefore affirmed.